950

## PEARSON v. UNITED STATES.
### No. 10621.

Circuit Court of Appeals, Ninth Circuit.
Feb. 28, 1945.

Lee J. Myers, of Los Angeles, Cal., for appellant.

Charles H. Carr, U. S. Atty., and James M. Carter and Ernest A. Tolin, Asst. U. S. Attys., all of Los Angeles, Cal., for appellee.

Before GARRECHT, MATHEWS, and STEPHENS, Circuit Judges.

STEPHENS, Circuit Judge.

Defendant below, A. M. Pearson, appeals from a judgment of conviction and sentence of the district court for the violation of Maximum Price Regulation No. 165, as amended,[1] issued pursuant to Section 2(a) of the Emergency Price Control Act of 1942, Pub.L. 421, 77th Cong., 2nd Sess., 56

---

[1] Maximum Price Regulation No. 165, 7 F.R. 4734; amended, 7 F.R. 5028, 8 F.R. 4782, 8 F.R. 5681, 8 F.R. 5755, 8 F.R. 5933, 8 F.R. 5806.

The pertinent sections of the Regulation are the following:

§ 1499.101(a) "Sales. No 'person' shall 'sell' or supply any of the 'services' set forth in paragraph (c) of this section at a price higher than the maximum price permitted by this Maximum Price Regulation No. 165, as amended."

§ 1499.101(c) "Services covered. This Maximum Price Regulation No. 165, as amended, shall apply to all rates and charges for the following services, except when such services are rendered as an employee."

§ 1499.101(c-45) "Radios * * * maintenance, rental or repair of."

§ 1499.102 "Maximum Prices for Services: General Provisions. Except as otherwise provided in Maximum Price Regulation No. 165, as amended, the seller's maximum price for any service to which this Maximum Price Regulation No. 165, as amended, is applicable shall be:

"(a) The highest price charged during March 1942 (as defined in this section) by the seller—

"(1) For the same service."

§ 1499.102(e-1) "For the purpose of this Maximum Price Regulation No. 165, as amended, the highest price charged by a seller during March 1942 shall be:

"(1) The highest price which a seller

Stat. 23, January 30, 1942, 50 U.S.C.A.Appendix § 902(a).[2]

We are here concerned with count six only of eleven counts in an information filed. Count six charges the appellant with knowingly, wilfully, and unlawfully selling and supplying to an individual service on a certain radio for a sum in excess of the maximum price permitted by the Regulation.

Appellant owns and operates a radio repair shop, and, as required by the Regulation, he filed a list of service and testing charges with the Office of Price Administration. The rate for "time" was $2 per hour, with fractions figured at 20¢ for five minutes or fractions thereof; 40¢ for ten minutes or fractions thereof over five minutes; and 50¢ for each fifteen minutes. Time charges were to cover that actually spent on repairs and were not to include "overhead", for which the additional charge of 10¢ to $2.50 was to be made. Tube replacements were priced at $1.

There is substantial evidence to the effect that a police officer took a radio to the appellant's shop, and, in the presence of appellant, he was waited upon by one of the employees.[3] The officer stated that a tube was out and that he wanted it fixed. He then signed an order, on which the word "repairs" was written by the employee. The officer does not recall that the word "repairs" was written on the order when he signed it. When the officer returned for his radio, he was informed by the appellant, personally, that two tubes had been found to be defective and that there was trouble in the oscillating circuit. The bill presented to, and paid by, the officer was for labor and material as follows: $4.70 for labor; one No. 80 tube at 70¢ and one 6D6 tube at $1.00, plus 5¢ tax; or a total of $6.45. Included in this amount was a charge for fifteen minutes time spent by the appellant in checking the work, checking the statement, taking the merchandise out of stock, making the billing and delivering the radio to the customer. (These charges were the same as had been charged in March, 1942, for time and service, and the price charged for the tubes furnished was not above ceiling.) The time sheets turned in by the employee for labor showed the following: From 2:10 P.M. to 3:00 P.M., 50 minutes; and from 4:10 P.M. to 5:-25 P.M., 1 hour and 15 minutes; or a total of 2 hours and 5 minutes.

The appellant testified that he watched the work as it was being done by his employee, notwithstanding the employee was an experienced technician, because, as man-

---

charged for a service 'supplied' by him during March 1942."

§ 1499.108(b) "Base-period records and reports. Every person selling services for which, upon sale by that person, maximum prices are established by Maximum Price Regulation No. 165, as amended, shall prepare on or before September 1, 1942, to the full extent of all available information and records and thereafter keep for examination by any person during ordinary business hours, a statement showing:

"(1) The highest prices which he charged for services supplied during March 1942, for which prices were regularly quoted in that month, together with an appropriate description and identification of such services:

"(2) That rate, if any, or the pricing method and charges, if any, regularly used during March 1942; and

"A duplicate of this statement shall be filed, on or before September 10, 1942, with the appropriate 'War Price and Rationing Board of the Office of Price Administration.' "

[2] Section 2(a) of the Emergency Price Control Act, 50 U.S.C.A.Appendix § 902 (a), authorizes the Price Administrator, by Regulation or Order to establish such maximum price or maximum prices on commodities as in his judgment will be generally fair and equitable and will effectuate the purposes of the Act.

The other pertinent sections of the Act are as follows:

§ 4(a) "It shall be unlawful * * * for any person to sell or deliver any commodity * * * in violation of any regulation or order under section 2 * * * or to offer, solicit, attempt, or agree to do any of the foregoing." 50 U.S.C.A.Appendix § 904(a).

§ 302(c). "Services rendered otherwise than as an employee in connection with the * * * repair * * * of a commodity, or in connection with the operation of any service establishment for the servicing of a commodity." 50 U.S.C.A. Appendix § 942(c).

§ 205(b) "Any person who willfully violates any provision of section 4 of this Act * * * shall, upon conviction thereof, be subject to a fine of not more than $5,000," etc. 50 U.S.C.A.Appendix § 925(b).

[3] At the time the charge was filed, the employee of the appellant was outside the United States.

ager of the shop, he, appellant, was supposed to see everything. He further testified that he spent fifteen minutes preparing the bill and checking the radio "to see that it was exactly as stated by my employee." The officer, who owned the radio, testified that appellant, upon delivering the radio to him, told him there had been trouble in the radio oscillating circuit. There is uncertainty as to whether or not appellant claimed to have worked into the night, himself, on the radio.

The appellant attacks the sufficiency of the evidence to support the verdict.

There was substantial evidence to the effect that just before taking his radio to appellant's shop, the officer had had it thoroughly and competently checked. The tubes were tested, and all of the removable parts were marked. The radio played all stations, and, aside from a noisy volume control, the set was found to be in good condition. A No. 80 tube was removed, intentionally damaged, and replaced. The radio did not then play. Upon redelivery to the officer, the radio was reexamined. The damaged tube and another tube had been replaced by other tubes. Dust, which had accumulated in the radio and was present at the time of the first examination, was found undisturbed, and the volume control was still noisy.

There was testimony to the effect that a 6D6 tube, or intermediate frequency tube, might be partially short-circuited and the radio still play, and that the tube should be replaced if it were so short-circuited; that a blown-out No. 80 tube, or rectifier tube, could signify many things, and that a new one inserted might also blow out; that it would be proper to check the power transformer, the filter, and the condenser, and that these could be checked in one or two operations even without the aid of modern up-to-date equipment. The inference to be drawn appears to be that the amount of work involved would be a matter of minutes rather than a matter of hours. The meaning of "checking" and "operation", as these terms are used in the record, is vague. One radio technician testified: "I am familiar with the standard RMS service charge. As to the item of $1.00 for tube

inspection, that inspection includes an examination of the radio and tubes to the extent that the serviceman will be able to render a reasonably accurate estimate of the repairs." "It takes five minutes to tell whether there is a shortage in a condenser or in the power supply which caused a rectifier tube to blow out."

■ The maximum price chargeable for services in connection with the replacement of tubes was $1, as evidenced by the list filed by the appellant with the Office of Price Administration.[4] As hereinbefore mentioned, an inspection of the radio before and after appellant's work on it revealed that no repairs whatsoever had been made, and the accumulated dust on the radio parts in place remained undisturbed. The evidence supports the jury's verdict of guilty.

It is the appellant's contention that he is not chargeable as principal, i.e., while such a charge is proper in a civil controversy, it is not applicable in a criminal case. Of the various cases cited in support of this contention, Paschen v. United States, 7 Cir., 1934, 70 F.2d 491, at page 503, recites: "* * * Generally speaking, it [the law of agency and agent's statements] does not so apply for the very good reason that civilly one is responsible for the acts and doings of his accredited agent acting within the scope of his authority, while one may be criminally liable only in case he intentionally does that which the law denounces and penalizes. * * *" The court, in the case of Nobile v. United States, 3 Cir., 1922, 284 F. 253, after stating similar rules, continues at page 255: "* * * While the civil doctrine that a principal is bound by the acts of his agent within the scope of his employment, and authority to do a criminal act will not be presumed, yet if the defendant was the proprietor, stood by, saw the bartender sell intoxicating liquor, * * * the jury was justified in concluding that the acts of [the employee] were done with defendant's authority and under his direction, and for such he is criminally liable. * * *." Similarly, the court stated the rule, in the case of United States v. Food and Grocery Bureau of Southern California, D.C.Cal.1942, 43 F.Supp. 966, to be

[4] If in March, 1942, the appellant customarily charged an additional 50¢ for fifteen minutes time spent in checking the work, checking the statement, taking the merchandise out of stock, making the bill-

ing and delivering the radio to the customer, in connection with radio tube replacements, then, obviously, this portion of the amount charged would not have constituted a violation of the Regulation.

that only the one who immediately does the act, or permits it to be done, is criminally punishable.

It will be recalled that the appellant was present at the time the officer took the radio into his shop and that the appellant watched the work as it was being done by his employee.

From the foregoing facts, and under the authorities, the jury had ample support for finding appellant guilty as a principal. The verdict is not inconsistent with 18 U.S.C.A. § 550, "Whoever directly commits any act constituting an offense defined in any law of the United States, or aids, abets, counsels, commands, induces, or procures its commission, is a principal."

The appellant further claims reversible error in connection with certain statements made by the trial judge in response to procedural instructions sought after the submission of the case to the jury. The judge told the jury—

"I want to say you have a duty to perform in this case."

"There is evidence here, and a dispute in the evidence, but you are the sole judges of the facts, and you should arrive at a verdict. I am going to give you sufficient time to see if you can."

"You have the sole question of determining whether this defendant is guilty or not guilty on any one of the counts, or on all of them, and certainly it seems to me that twelve reasonable men, following their oaths of office, would approach this question without prejudice or bias either against the government or against the defendant, and should be able to arrive at a conclusion in this case. At least I am going to give you that opportunity."

The counsel of the appellant objected in that the instructions implied that a verdict must be reached. The explanation then given was in part as follows:

"I have not said they must reach a verdict. I said I was not going to discharge them after two or three hours' time. After they have been here maybe a day or so, and haven't agreed on a verdict, if they still feel the same way, I may discharge them, but I don't think I should discharge them now."

"I stated that they are never to do that [compromise their honest judgment]. If a man has an honest conviction that he should not surrender it simply for the purpose of arriving at a verdict; but it must

be an honest conviction; it must not be one based on prejudice and bias."

These statements did not constitute error.

The appellant objects to certain portions of the testimony, incorporated into the record on the appeal before this court, having to do with counts under which he was acquitted. It is the appellant's contention that these portions were inserted for the purpose of supplying the element of intent, necessary to render the appellant chargeable criminally as principal. Whatever the purpose of the appellee, we think it immaterial, because for the most part the testimony was of a technical nature and necessary to effect a better understanding by this court of the problems involved in count six. See also People v. Baker, 1938, 25 Cal.App.2d 1, 76 P.2d 111, 112, and Henderson v. United States, 9 Cir., 1944, 143 F.2d 681.

Affirmed.