UNITED STATES of America,
Plaintiff-Appellee,

v.

Walter A. LISOWSKI, Defendant-
Appellant.

No. 74–1042.

United States Court of Appeals,
Seventh Circuit.

Argued June 3, 1974.

Decided Oct. 29, 1974.

Rehearing Denied Nov. 21, 1974.

William A. Barnett, Charles R. Purcell, Chicago, Ill., for defendant-appellant.

James R. Thompson, U. S. Atty., Gary L. Starkman and Theodore T. Scudder, Asst. U. S. Attys., Chicago, Ill., for plaintiff-appellee.

Before CLARK, Associate Justice (Retired),* and PELL and SPRECHER, Circuit Judges.

PELL, Circuit Judge.

Defendant Walter A. Lisowski was convicted by a jury on all counts of an

---

* Associate Justice Tom C. Clark of the Supreme Court of the United States (Retired) is sitting by designation.

indictment charging him with five felony-grade offenses under the Internal Revenue Code.[1]

The defendant raises three issues on appeal: (1) whether the evidence was sufficient to show that the defendant's failure to report all his income was willful; (2) whether the district judge correctly charged the jury; and (3) whether the district court erred in excluding certain testimony.

## I

■ The defendant's first contention is that the evidence was insufficient to prove that he acted willfully in understating income on the tax returns involved in this case. "Willfulness," in criminal tax offenses, requires a showing of "bad faith" or "evil intent." United States v. Bishop, 412 U.S. 346, 361, 93 S.Ct. 2008, 36 L.Ed.2d 941 (1973); United States v. Murdock, 290 U.S. 389, 398, 54 S.Ct. 223, 78 L.Ed. 381 (1933).

Considering, as we must, the evidence in the light most favorable to the Government, Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942), the following facts were established at the trial.

During the period in issue, the defendant operated Mid-West Screw Products (Mid-West), a company engaged in manufacturing metal products. Until September 1, 1967, the business was operated as a partnership with Lisowski and his wife as the only partners. On that date, a corporation was formed which took over the partnership assets and continued the business. The defendant, owning 51 percent of the stock, became the president of the corporation.

In the course of manufacturing finished metal parts, Mid-West generated large quantities of scrap metal. During the years in question, Mid-West sold virtually all of this scrap to D. Pollack & Sons, Inc. (Pollack), a scrap broker. When Pollack picked up the scrap, shipping tickets were prepared, recording the type of metal and the weight but not the price. Payment for the scrap was usually made a month or two after the scrap had been picked up, with the pricing done by William Pollack, president of the Pollack company, based on the market price of scrap at the time of the pick up.

According to William Pollack, the defendant, during the three-year period in question, often telephoned him and requested that payment for the scrap be made partly by check and partly in cash. The Pollack records indicated that, during the pertinent time, 48 checks were written by Pollack's bookkeeper for scrap payments to Mid-West, with 29 of these checks payable to "Mid-West" and 19 checks payable to "cash."[2] Of the 19 checks payable to "cash," 15 were prepared and dated on the same date as an-

---

1. Counts I and II of the indictment charged the defendant with willful attempts to evade and defeat income taxes owed by him and his wife for the calendar years 1967 and 1968, respectively, in violation of 26 U.S.C. § 7201. Counts III and IV charged Lisowski, as president of Mid-West Screw Products, Inc., a corporation, with willful attempts to evade and defeat income taxes of the corporation in the fiscal years 1968 and 1969, respectively, in violation of 26 U.S.C. § 7201. Count V charged the defendant with willfully making and subscribing a false partnership income return for Mid-West Screw Products, a partnership of the defendant and his wife. for the fiscal year 1967, in violation of 26 U.S.C. § 7206(1).

26 U.S.C. § 7201 provides:
"Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony . . .."

26 U.S.C. § 7206(1) provides:
"Any person who . . . willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter . . . shall be guilty of a felony . . .."

2. Pollack's bookkeeper indicated in the Pollack cash journal which "cash" checks were paid to Mid-West for scrap.

other check payable to "Mid-West." Only one check payable to "cash" was not prepared within three days of an accompanying check to "Mid-West." The 19 "cash" checks ranged in amount from $848.11 to $2,070.08 and totaled over $26,000.

William Pollack testified that he himself would cash the "cash" checks at a bank, after which he would go to the Mid-West offices. According to Mr. Pollack, he sometimes gave the "Mid-West" check to the defendant's bookkeeper, but he always delivered the cash personally to Lisowski when the defendant was alone. Often Mr. Pollack handed the defendant simultaneously the cash and a "Mid-West" check. A copy of the Pollack company receiving ticket always accompanied the payment to Mid-West.

Lisowski stated on some occasions, according to William Pollack, that he, Lisowski, needed the cash to entertain customers and buy tools.

The payments of cash by Pollack to Lisowski continued until 1969. At that time Mr. Pollack told the defendant that "the I.R.S. is checking my books, and I don't want to give any more cash." Thereafter, the Pollack company made payments to Mid-West only by checks payable to "Mid-West."

The books for Mid-West were kept by a bookkeeper at the Mid-West office. The evidence indicated that every "Mid-West" check from Pollack had been recorded by the bookkeeper in the Mid-West books. The bookkeeper testified that she was unaware, however, that cash payments were received from Pollack. Such cash was not recorded in Mid-West's books.

The tax returns for Mid-West were prepared by an accounting firm. The accountants who prepared the Mid-West returns found entries in the records indicating the Pollack check payments but they found no corresponding entries for cash payments. The accountant who prepared four of the defendant's five returns asked Lisowski "for all his outside income interests, dividends and any other income." In response, Lisowski produced certain documents and told the accountant about certain business expenses and charitable deductions but did not mention the cash payments from Pollack. All of the tax returns in issue were signed by the defendant after they had been completed.

The defendant concedes that the evidence was sufficient to permit the finding that the returns understated the gross income and gross sales, respectively, of himself and of Mid-West, but contends that the evidence fails to show that the understatements were willful.

■ We find that there was more than enough evidence presented to support a finding that the defendant acted willfully. Over a two and one half year period, Lisowski expressly requested, on 19 occasions, that William Pollack make payment for scrap partially in cash. Sizable amounts of currency, ranging from $848 to $2,070, were given to the defendant on these occasions. See Sherwin v. United States, 320 F.2d 137, 141 (9th Cir. 1963), cert. denied, 375 U.S. 964, 84 S.Ct. 481, 11 L.Ed.2d 420 (1964). The transfers always took place privately between Lisowski and William Pollack. Moreover, with one exception, the cash payments were always accompanied, on the same day or soon thereafter, by a check payable to "Mid-West." No cash payment was ever recorded in Mid-West's books and yet every check payment was recorded, even though Lisowski often received both simultaneously. "[A] consistent pattern of not reporting large amounts of income [is] sufficient to support an inference of willfulness." Sherwin v. United States, *supra* at 141. See also Spies v. United States, 317 U.S. 492, 499, 63 S.Ct. 364, 87 L.Ed. 418 (1943). Further, the reason allegedly given by the defendant[3] for needing the cash (i. e., to entertain customers and to purchase tools) strains credulity in light of the amount of currency involved. See United States v. Scher, 476 F.2d 319,

3. Lisowski did not testify at the trial.

324 (7th Cir. 1973). Also, the fact cannot be ignored that unreported income comes out of the highest bracket at which the taxpayer is being taxed. Unfortunately, the incentive to the dishonest person to forget reporting income increases as his income increases. Finally, we note that the practice of receiving part payment in cash came to an abrupt end when the I.R.S. began investigating Pollack.

The present case is clearly distinguishable from United States v. Pechenik, 236 F.2d 844 (3d Cir. 1956), upon which the defendant relies. In *Pechenik*, a corporate president was convicted of willful tax evasion on the ground that certain expenditures of the company were improperly treated, thereby decreasing the company's net income. The evidence indicated that Pechenik had supplied his bookkeeper with complete information regarding the company's income and expenditures and had left it to the bookkeeper to determine how the various expenditures should be entered on the books. The Third Circuit held that, in this situation, the evidence was insufficient to prove willfulness and reversed the conviction. In the present case, Lisowski, unlike Pechenik, did not supply his bookkeeper or his accountant with any facts concerning this particular income of the company and himself, but instead handled the transactions relating to this income in what can only be termed a clandestine manner. "[A] taxpayer cannot shift the responsibility for admitted deficiencies to the accountants who prepared his returns if the taxpayer withholds vital information from his accountants, or takes positive action designed to mislead them." United States v. Scher, supra, 476 F.2d at 321; Bender v. Commissioner, 256 F.2d 771, 774 (7th Cir. 1958). See also Windisch v. United States, 295 F.2d 531, 532 (5th Cir. 1961).

The question of willfulness was a matter for the jury to decide. Considering the record as a whole, the evidence was amply sufficient to support the jury's verdict.

II

The defendant next argues that the district court erred in instructing the jury. The defense, however, failed to state in court specific objections to the jury charges, as required by Rule 30, Fed.R.Crim.P. Normally, such a failure constitutes a waiver of a defendant's objection. United States v. Howard, 139 U.S.App.D.C. 347, 433 F.2d 505, 509 (1970). Lisowski contends, however, that specific objections were made during the conference on instructions and that these specific objections were not repeated in court because the district judge instructed counsel to make objections merely in a summary manner for the record. The defense explains that neither its specific objections made at the instruction conference nor the judge's statement that objections for the record should be summary in nature are in the record since the district judge who tried this case does not permit, according to the defense, the court reporter to record the conference on instructions. The Government, in its brief and in oral argument, did not deny the defendant's statement concerning what transpired. Under the circumstances, we will assume *arguendo* that the district court was sufficiently apprised of the objections to instructions and will not treat the objections as waived but will consider the merits of each objection.

First, Lisowski contends that the district court erred in giving an agency instruction, which the defense claims was "strongly suggestive" of derivative liability.[4] We disagree. The evidence

4. The instruction stated:
"It is not necessary to prove that the accused personally did every act constituting the offense charged. As a general rule, whatever any person is legally capable of doing himself, he can do through another as his agent. So, if the acts or conduct of an employee or other agent are willfully ordered or directed, or willfully authorized or consented to by the accused, then the law holds the accused responsible for such acts or conduct the same as if personally done by the accused."

indicated that, although Lisowski signed the tax returns, the defendant did not himself keep the books for Mid-West or prepare the tax returns in question, These tasks were performed by a bookkeeper and accountants, respectively, and the net result of their actions was the understatement of income, even though these individuals may have been innocent pawns in the process whereby Lisowski received money which was not reported for income tax purposes by him or by Mid-West to whom it was owing. Also, "through another," i. e., William Pollack, he arranged to receive the money. Without the cooperation of Pollack the concealment would not have been possible.

■ Moreover, the jury instructions, when read, as they must be, as a whole, United States v. Hamilton, 420 F.2d 1096, 1098 (7th Cir. 1970), made clear that Lisowski should not be convicted unless it was proved beyond a reasonable doubt that he willfully attempted to evade or defeat taxes. In this situation, the giving of the instruction is not reversible error. See Gariepy v. United States, 220 F.2d 252, 260 (6th Cir. 1955), cert. denied, 350 U.S. 825, 76 S. Ct. 53, 100 L.Ed. 737; Pearson v. United States, 147 F.2d 950, 952–953 (9th Cir. 1945); Paschen v. United States, 70 F.2d 491, 503 (7th Cir. 1934).

■ The defendant next argues that the district court erred in instructing that the Government only need prove venue by a preponderance of the evidence. Lisowski contends that the court should have required proof of venue beyond a reasonable doubt. This court, in United States v. Aldridge, 484 F.2d 655, 659 (7th Cir. 1973), has recently held that venue need only be proved by a preponderance of the evidence. We adhere to that decision and in any event, there was here ample undisputed indicia of the propriety of the venue.

Lisowski further contends that the district judge erred in refusing to instruct the jury:

"Salaries paid by a corporation to its officers, including shareholders, are deductible from the corporation's gross income in computing its taxable income. If you find from the evidence that Walter Lisowski received money from Mid-West Screw, Inc., and that such money constituted additional salary to him, then such amounts should be deducted from Mid-West's gross income in determining its taxable income. Additional income to the corporation, to the extent it might also constitute additional salary, has no effect on the taxable income or tax of the corporation." [5]

■ The proffered instruction is an incomplete and inaccurate statement of the law and, therefore, the district court could properly refuse to give it. United States v. Fellabaum, 408 F.2d 220, 228 (7th Cir. 1969), cert. denied, 396 U.S. 858, 90 S.Ct. 125, 24 L.Ed.2d 109. Section 162(a) of the Internal Revenue Code of 1954, 26 U.S.C. § 162(a), permits, *inter alia,* a taxpayer to deduct "all the *ordinary and necessary* expenses paid or incurred during the taxable year in carrying on any trade or business, including—(1) a *reasonable* allowance for salaries or other compensation for personal services actually rendered." (Emphasis added.) Absent a showing that a payment is an ordinary and necessary expense and reasonable in amount, a taxpayer may not deduct it as salary. See 4A J. Mertens, The Law of Federal Income Taxation, §§ 25.09 and 25.68 (1972).

The present case is, therefore, distinguishable from United States v. Bass, 425 F.2d 161 (7th Cir. 1970), on which the defendant relies. In *Bass,* the proffered instruction referred to "reasonable, ordinary, and necessary" payments.

5. This proffered instruction was relevant only to Counts III and IV. The sentence as to each count was the same and the prison sentences run concurrently; however, each count was the basis of a separate fine.

■ Further, the factual situation in the present case is quite different from *Bass*. There the income received by the defendant had been deducted as corporate expenses. In connection with the charged § 7206 violation, it was a part of the Government's case in *Bass* to prove that the claimed deductions were improper and, of course, salary payments under the circumstances recited above are properly deductible. In the present case, the cash amounts received by Lisowski never appeared in the corporate returns either as income received or as deductions. Lisowski, according to the evidence, was asking for the cash amounts for the purpose of entertaining customers or buying tools. While the latter might possibly have been a capital item, and only depreciable, entertaining customers might have been a deductible expense if the cash payments had ever been reflected in the corporate returns in the first place, but they were not. The corporate return here was false in not including the amounts of the cash paid to Lisowski.

Without laboring the point further, Lisowski's belated attempt to find succor in the tendered instruction is of no avail to him.

### III

Mid-West operated, for income tax purposes, on an accrual basis but recorded at the time payment was received the income from Pollack on scrap sales (at least those paid by check payable to Mid-West, the cash payments not being recorded anywhere). Out of this situation, Lisowski claims error in the district court's sustaining of an objection to a propounded hypothetical question. The defendant on appeal asserts that the purpose of the hypothetical question was to show that Mid-West was using the cash method of accounting to reflect the scrap income and that if the income had been accrued it would have fallen into the fiscal year 1968 rather than 1969. Count IV pertained to the latter year and the witness supposedly would have shown that enough of the scrap income would

have been removed from that year to leave the understatement of income too insubstantial to support a verdict. Of course, the understatement for the fiscal year 1968 covered by Count III would have been correspondingly increased. It is also clear that there would still have remained some understatement in 1969. Whether this would have been so insufficient as to have given life to defendant's contention we do not need to decide.

At the outset, we have a semantical problem. While the parties purport to treat the reporting of the scrap sale income as having been on a cash basis, and Honig, one of the accountants who had prepared the Mid-West tax returns, apparently so recognized this status in response to a question, it is not clear to us that the situation was not merely one where the accrual was deferred until the price could be ascertained. This price was not ascertained until it was set by Pollack and his determination was based upon a number of factors including published prices. The published prices which apparently could have been available to Mid-West at the time of the delivery of the scrap did not always coincide with the prices determined by Pollack and accepted ordinarily by Lisowski. In any event, the price was not finally determined until payment time. This was the course of the dealing between the buyer and seller and would appear to establish the time that the liability for tax would be established, irrespective of whether the appearance on the books could be termed to be on a cash basis or an accrual basis.

As the district court stated, "You are on the accrual basis, but the question is when a given item should be accrued. The accountant the taxpayer hired to do his books and his tax return decided, based on his knowledge, that it should be accrued when payment was made. It seems to me that his decision as to that is binding on the taxpayer."

■ The actual date of cash changing hands is not the significant factor

in the case of an accrual basis taxpayer. Nevertheless such a taxpayer cannot accrue an item until all the events occur which fix the amount of that item and determine the liability to pay it. Commissioner v. H. B. Ives Co., 297 F.2d 229, 230 (2d Cir. 1961), cert. denied, 370 U.S. 904, 82 S.Ct. 1250, 8 L.Ed.2d 400 (1962). Here the controlling events did not apparently occur until the time of payment.

Even if ordinary accounting terminology would label the belated payments as being on a cash basis, the method was that adopted by the taxpayer and was a part of the picture on which the jury was to determine whether he had willfully attempted in any manner to evade or defeat corporate taxes.

■ If Mid-West was employing a mixture of accrual and cash then "[w]hen the taxpayer has employed a hybrid or unauthorized accounting method, he is hardly in a position to complain when the computation employing that method is introduced to prove specific items of omitted income." Morrison v. United States, 270 F.2d 1, 4 (4th Cir. 1959), cert. denied, 361 U.S. 894, 80 S. Ct. 196, 4 L.Ed.2d 150; cited with approval in United States v. Marttila, 434 F.2d 834, 837 (8th Cir. 1970).[6]

■ The district court in not permitting the hypothetical question to be answered relied upon Morrison, supra, and Clark v. United States, 211 F.2d 100, 105 (8th Cir. 1954), cert. denied, 348 U.S. 911, 75 S.Ct. 289, 99 L.Ed. 714 (1955). The defendant candidly admits on appeal that Clark cannot be distinguished but asks that it not be followed

in this circuit. While Clark may have some factual distinctions from the present case, we accept the principle enunciated in Clark and agree that there was no place for "hypothesizing of facts which had no probative basis."

Lisowski contends that Morrison is of questionable authority because of the later case of United States v. Wilkins, 385 F.2d 465 (4th Cir. 1967), cert. denied, 390 U.S. 951, 88 S.Ct. 1043, 19 L. Ed.2d 1144 (1968). We find Wilkins to be of no help to the defendant. That case correctly held that the Government could not include income in a year which would have been entirely without any legal basis despite the taxpayer's attempt to do so at the time he filed the return. That is not the situation in the case before us.

We do not disagree with the Wilkins court that it is widely accepted that a defendant in a tax evasion case is entitled to show that no money was owing to the Government in the prosecution year. 385 F.2d at 470. We decline, however, to carry the principle to the point of saying that the defendant can repudiate the manner in which he did business. The facts pertaining to that manner of doing business and the tax consequences thereof cannot be brushed aside.

Further, and in any event, the hypothetical question was defective. It failed to include a necessary element that Mid-West had no available means of determining prior to the payments from Pollack what the current value of the scrap was as of the date of delivery.

For the reasons set out hereinbefore, the judgments of conviction on each count are affirmed.

---

6. We have not intended to express any opinion on the acceptability of a truly hybrid method under 26 U.S.C. § 446. We are here dealing with the charged violation of a criminal statute, 26 U.S.C. § 7201, an attempt to evade or defeat taxes.