**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Dolores H. WALSH,
Defendant-Appellant.**

No. 79–1272.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 8, 1979.

Decided Aug. 8, 1980.

Thomas P. Sullivan, U.S. Atty., L. Felipe Sanchez, Asst. U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before PELL and BAUER, Circuit Judges, and DUMBAULD, Senior District Judge.*

BAUER, Circuit Judge.

Defendant-appellant Dolores H. Walsh appeals from the judgment of conviction entered upon the jury verdict finding her guilty on two counts of tax evasion in violation of Title 26, United States Code, Section 7201. Appellant raises three issues for review on appeal: (1) whether the evidence adduced at trial was sufficient to sustain the jury verdict; (2) whether the trial court's instruction to the jury on the elements of the offense charged in the indictment was erroneous; and (3) whether the trial court erred in refusing to give the appellant's theory of defense instruction. We are unpersuaded by the arguments advanced in support of these contentions and accordingly affirm the judgment appealed from for the reasons set forth below.

I

On March 31, 1977, the grand jury returned a two count indictment charging the appellant and her husband, Robert E. Walsh, with willfully and knowingly attempting to evade a portion of the federal income taxes jointly due and owing for the calendar years 1970 through 1971 by submitting to the Internal Revenue Service false and fraudulent joint income tax returns for those years. Appellant's jury trial began on November 21, 1977 and concluded on December 1, 1977 when a mistrial was declared after the jury was unable to reach a verdict. Appellant was tried a second time before a jury with the Honorable Hubert L. Will presiding, and the jury returned a verdict of guilty on both counts of the indictment. The trial court suspended imposition of sentence and ordered the appellant placed on two years' probation.

Kenneth L. Cunniff, Chicago, Ill., for defendant-appellant.

* The Hon. Edward Dumbauld, Senior Judge of the United States District Court for the Western District of Pennsylvania, is sitting by designation.

The evidence at trial showed that during the relevant period, 1970–1971, Robert Walsh owned and operated Calumet Reports, Inc., a company engaged in assessing the insurability of properties for insurance companies. Robert Walsh carried on his company's books an employee named D. Kravitz, who was listed as a property inspector for Calumet. During the two years in question, ninety-nine Calumet checks totalling $19,075 were issued to D. Kravitz, However, employees of Calumet testified that they had never met or seen an employee by the name of D. Kravitz. The evidence further showed that almost all of the checks drawn to "D. Kravitz" were deposited into the personal bank accounts of either Dolores or Robert Walsh, or were cashed by them. The appellant, whose name was Dolores Kravitz prior to her marriage to Robert Walsh, had a son, David Kravitz, who was 15 years of age in 1970.

The evidence with respect to the alleged tax evasion scheme showed that on January 17, 1968, a business checking account in the name of Calumet Reports, Inc., was opened at the First National Bank of Dolton in Dolton, Illinois. Robert Walsh, as president of Calumet, was authorized to sign checks on that account. From March 1970 to November 1971, ninety-three checks payable to "D. Kravitz" were drawn and paid on the Calumet account in amounts ranging from $140.00 to $750.00. Thirty-nine of these checks were negotiated at the Lansing Federal Savings and Loan between March 2, 1970 and September 10, 1971. Lansing Federal only cashed checks for customers who held mortgages with the bank or maintained savings accounts sufficient to cover the amount of the check. The appellant and her former husband, Michael Kravitz, had held a mortgage account at Lansing Federal. Many of the checks that were negotiated during the relevant period bore the Kravitz mortgage account number, although none of these checks were charged against the mortgage account.

On April 17, 1969, a personal checking account was opened at the First National Bank of Lansing in the name of Dolores H. Kravitz. Subsequent to her marriage to Robert Walsh in December 1969, the bank attached to the original account signature card a photocopy of her new signature bearing the name of Dolores H. Walsh. Neither David Kravitz nor any other person was ever authorized as a signatory on the account. In 1970, sixteen Calumet checks payable to "D. Kravitz" were either cashed or deposited into the Kravitz-Walsh account at the bank.

On July 23, 1970, Robert E. Walsh opened a checking account at the Beverly Bank of Chicago and listed his employer as Calumet Reports, Inc. Two Calumet checks payable to "D. Kravitz" were endorsed "D. Kravitz, deposit only, Robert E. Walsh," and deposited into that account. A $500.00 check payable to "D. Kravitz" was endorsed "D. Kravitz, R.E. Walsh" and cashed at the Beverly Bank.

In January 1971, Dolores H. Walsh opened a checking account at the Bank of Lansing. Ten of the Calumet checks payable to "D. Kravitz" were negotiated at the Bank of Lansing in 1971; eight were deposited into her account and two were cashed. Deborah White Runetti, a former teller who handled three of the ten checks negotiated at the bank, testified at trial. One check was endorsed "D. Kravitz" and deposited into the account of Dolores H. Walsh. The other two checks were endorsed "D. Kravitz" and "D. Walsh." Mrs. Runetti testified that she recalled the appellant as being the customer involved.

The other evidence with respect to the Calumet checks payable to "D. Kravitz" showed that seven such checks were negotiated in 1971 at the New Lenox State Bank where the appellant maintained a checking account. A Calumet check payable to "D. Kravitz" in the amount of $140.00 and dated September 11, 1970, was cashed at a Sears, Roebuck & Co. department store. The check was endorsed "D. Kravitz" and had the appellant's Sears credit card imprinted on its reverse side. Also, a check payable to "D. Kravitz" was cashed at the Town and Country Motel in Calumet City, Illinois on July 30, 1971, the date the Walsh-

es checked out of the motel. Finally, in either 1970 or 1971, eight Calumet checks payable to "D. Kravitz" were cashed in the amount of $200.00 each at Lans-Oak Foods, a grocery store in Lansing, Illinois. Three Calumet checks were negotiated at Berger's Supermarket in Munster, Indiana during the same period.

Robert Archer was retained as the accountant for Calumet during 1970–1971. Among his duties was the maintenance of corporate records and the preparation of the company's payroll and its tax returns. The corporate records listed "D. Kravitz" as an investigator for Calumet and showed that "D. Kravitz" had been paid $7,570 in investigator fees in 1970 and $10,465 in fees in 1971. These records also showed six checks payable to "D. Kravitz" for investigator fees and expenses, ranging in amounts from $50.00 to $200.00 during this period.

Archer also prepared the Walshes' personal federal income tax returns for 1970 and 1971 based on information contained in a four-page income tax data sheet Archer sent to his clients. The data sheet requested the Walshes to list, among other items, their total income, the names of their dependent children, and income earned by dependents in excess of $600.00 for the year. The appellant completed part of the information requested on the data sheet, including the names of dependents. The 1970 and 1971 data sheets indicated that dependent David Kravitz had no income for those years. The "D. Kravitz" investigator fees were not included in the total income figures submitted to Archer on the data sheets for 1970 and 1971 or on the federal income tax returns filed jointly by the appellant and her husband for those years.

The other evidence at trial related to interviews of the Walshes by agents of the Internal Revenue Service. Agent Rubalca questioned Robert Walsh about the ninety-three "D. Kravitz" checks paid as investigator fees. Robert Walsh stated to the agent that D. Kravitz was not related to his wife, but was merely an employee of Calumet. Special Agent McDermott interviewed Do-

lores Walsh about the "D. Kravitz" checks. Upon inspection of the checks, the appellant disavowed any personal involvement, but suggested that the payments may have been made to her son, David Kravitz.

Finally, John Kechler, an examiner of documents, testified for the government concerning his comparative analysis of the endorsements on ninety-three of the checks with samples of the known handwriting of Robert Walsh, Dolores Walsh, and David Kravitz. In his opinion, it was highly probable that David Kravitz was not the author of the "D. Kravitz" endorsements. It was his further opinion that there was a high degree of probability that the "D. Kravitz" and "D. Walsh" endorsements on seventy-one of the checks were written by Dolores Walsh, and that it was probable, based on the low quality of the copies examined, that the endorsements on sixteen of these checks were written by Dolores Walsh. It was also Kechler's opinion that Robert Walsh endorsed five of the checks. Kechler had no opinion about one of the checks because the copy was illegible.

## II

In her first argument on appeal, appellant contends that the evidence adduced at trial was insufficient to prove intent to evade income taxes. We think the evidence cited above, viewed in the light most favorable to the government, *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), was sufficient for the jury to find that the appellant's conduct constituted a voluntary and intentional violation of the federal income tax law.

In *United States v. Pomponio*, 429 U.S. 10, 97 S.Ct. 22, 50 L.Ed.2d 12 (1976) (*per curiam*), the Supreme Court held that the term "willful" in tax cases simply meant a voluntary, intentional violation of a known legal duty. *Id.* at 12, 97 S.Ct. at 23. In addition, the Supreme Court expressly rejected the defendant's contention that the term willful requires proof of "evil intent" beyond a specific intent to violate the laws. Thus, the question of willfulness is one of fact for the jury to decide based

upon all the facts and circumstances of the case. *United States v. Lisowski*, 504 F.2d 1268 (7th Cir. 1974). Moreover, proof of willfulness is most often made through circumstantial evidence. *Spies v. United States*, 317 U.S. 492, 499, 63 S.Ct. 364, 368, 87 L.Ed. 418 (1943).

■ In the instant case, the evidence adduced at trial supports the jury's finding that the appellant's conduct was willful. The appellant and her husband received unreported income during 1970 and 1971 in the amount of $19,075 from ninety-nine checks negotiated under the name of "D. Kravitz." The filing of federal income tax returns with knowledge on the part of the taxpayer that he should have reported more income than he did is sufficient to sustain a finding of willful intent to defeat and evade the tax. *Sansone v. United States*, 380 U.S. 343, 352–353, 85 S.Ct. 1004, 1010–11, 13 L.Ed.2d 882 (1965).

■ The evidence also showed that the appellant endorsed most of the checks in the name of "D. Kravitz" in 1970 and 1971, even though her name had changed to Walsh in December 1969. The use of a fictitious name in an attempt to conceal income is a classic example of circumstantial proof of willfulness. *Spies v. United States*, *supra* 317 U.S. at 499, 63 S.Ct. at 368.

Moreover, when the appellant was interviewed by an agent of the Internal Revenue Service, she falsely advised him that she did not possess any knowledge pertaining to the "D. Kravitz" checks or endorsements. She also suggested to the agent that the checks might have represented payments to her son, David Kravitz. However, the evidence showed that her son had never been employed at Calumet Reports, Inc., and that she had endorsed a majority of the checks. The testimony of the handwriting expert showed that these statements regarding the "D. Kravitz" checks were false. These false statements constitute further proof of the appellant's willful conduct. *United States v. Scher*, 476 F.2d 319, 323 (7th Cir. 1973).

Appellant's willfulness was further shown by her actions regarding the accountant's income tax data sheets. Appellant completed part of the data sheets the accountant would use in preparing the income tax returns for the Walshes, but did not include on the data sheets the approximately $19,000 in income she had received from the negotiation of the "D. Kravitz" checks during 1970 and 1971. Failure to provide an accountant with accurate and complete information is proof of willfulness. *United States v. Scher, supra* at 323; *United States v. Tolbert*, 406 F.2d 81, 83 (7th Cir. 1969).

Finally, the appellant argues that she was simply a docile signatory of the joint income tax returns that were prepared at the direction of her husband. The record refutes this contention. For example, a former teller at the Bank of Lansing testified that the appellant negotiated three of the "D. Kravitz" checks at the bank. The record also revealed that seven checks payable to "D. Kravitz" were negotiated through her personal checking account at the New Lenox State Bank and that she cashed one of the checks on her account at a department store.

Based on the foregoing recitation of the evidence adduced at trial, we find the appellant's challenge to the sufficiency of the evidence to be without merit.

### III

■ The appellant next argues that the trial court, in its instruction on the specific intent element of the offense charged in the indictment, erroneously instructed the jury that they could consider what a reasonable person would have done in the circumstances. Specifically, Judge Will stated to the jury:

> You are going to have to examine all the evidence in the case, take into consideration everything that is involved here, the amounts, statements made, physical acts done, everything you can, which is a matter of evidence, to determine what inferences you should draw with respect to the state of mind of the defendants with respect to their intent; did they or did they not intend willfully to defraud the government of taxes which they knew were due and owing, or which a

person reasonably in their situation should have known were due and owing
. . . . .

Tr. at 729–730. The appellant objected at trial, outside the presence of the jury, to this instruction on the ground that it reduced the government's burden of proof to something less than beyond a reasonable doubt. The trial court overruled the objection and the appellant has renewed her claim of reversible error on appeal.

We agree that Judge Will erred in so instructing the jury, but conclude that the error was harmless. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). It is obvious that reference to the conduct of a "reasonable person" is totally misplaced in the context of a criminal trial in which the crime charged requires specific intent. However, upon careful review of the full instructions to the jury, we are not persuaded that the error associated with this reference affected the "substantial rights" of the appellant. 28 U.S.C. § 2111. Whether a jury has been properly instructed is to be determined not upon consideration of a single paragraph, sentence, phrase, or word, but upon the charge as a whole. *Pickens-Kane Moving & Storage Co., Inc. v. Aero Mayflower Transit Co., Inc.*, 468 F.2d 490 (7th Cir. 1972). An examination of the full instructions to the jury, in this case comprising approximately thirty-eight pages of transcript, reveals more than twelve paragraphs of instruction devoted to explaining the government's burden to prove beyond a reasonable doubt that the appellant willfully and knowingly violated the statute prohibiting the filing of a false and fraudulent federal income tax return. *E. g.,* Tr. at 708–710, 715, 725. We therefore find the instructions, viewed as a whole and in the context of the trial, contained an adequate statement of the law to guide the jury's determination.

## IV

In her final argument on appeal, the appellant asserts that the district court erred in refusing to give the jury instruction which she tendered regarding her good faith theory of defense. We find this argument to be without merit.

It is settled that the defendant is entitled to have the jury consider any theory of defense, however tenuous, which is supported by the law and which has some foundation in the evidence. *United States v. Rothman*, 567 F.2d 744, 752 (7th Cir. 1977); *United States v. Bessesen*, 445 F.2d 463 (7th Cir.), *cert. denied*, 404 U.S. 984, 92 S.Ct. 448, 30 L.Ed.2d 368 (1971). The appellant offered instruction No. 32 as her theory of defense, which read as follows:

That the funds paid to the name of D. Kravitz, either were funds paid to her son and used for family expenses, and that the funds which were paid by Calumet Reports, Inc. were a constructive dividends taxable to shareholders of the corporation.

Tr. at 633. Judge Will refused to give the instruction on the grounds that it was a misstatement of the law and that it was unsupported by the evidence, noting "[t]here is no evidence in this case that these funds were ever paid to David Kravitz, because all the evidence in the case so far indicates that the checks were cashed by Dolores or Robert." Tr. at 636. Moreover, the literal reading of the instruction purports to establish that the funds from the "D. Kravitz" checks would not be taxable to the appellant simply because she was not a shareholder. Thus, the trial court correctly rejected the instruction as a misstatement of the law. *See Rutkin v. United States*, 343 U.S. 130, 137, 72 S.Ct. 571, 575, 96 L.Ed. 833 (1952).

Finally, we note that the instructions ultimately given to the jury did address the theory of good faith as a defense. In instructing the jury on the definition of the terms "willful attempt" and "knowingly," Judge Will stated in pertinent part:

I said willful attempt involves two specific things, an intent to evade and defeat taxes, and act in furtherance of such intent. It also requires that the act must have been done voluntarily and intelligently, for the specific purpose of keeping from the government a tax which is imposed by the income tax laws, which it was the legal duty of the defendant to

pay to the government, and which the defendants knew was a legal duty to pay.

In other words, the attempt must be made with bad purpose, either to disobey or disregard the law, and to defraud the government of some substantial amount of income tax lawfully due from the defendants.

Acts are not willful if they are done through inadvertence, mistake or other innocent reasons.

Tr. at 728. If the defense of good faith is presented in parts of other instructions, then a separate instruction is not required. *United States v. Hoopes*, 545 F.2d 721 (10th Cir. 1976); *see also, United States v. Pomponio*, 429 U.S. 10, 13, 97 S.Ct. 22, 24, 50 L.Ed.2d 12 (1976) (*per curiam*). Viewed in their entirety, the instructions in this case did contain a good faith instruction. Accordingly, since the appellant's theory of the case instruction was not supported by the law or the evidence, it was properly rejected.

For the foregoing reasons, the judgment appealed from is affirmed and the Clerk of this Court is directed to enter judgment accordingly.

AFFIRMED.