UNITED STATES of America
v.
Charles I. PECHENIK, President, Colonial Products Company, Appellant.
No. 11720.

United States Court of Appeals Third Circuit.

Argued May 8, 1956.
Decided Sept. 18, 1956.

Thomas D. McBride, Philadelphia, Pa. (Raymond J. Bradley, McBride, von Moschzisker & Bradley, Philadelphia, Pa., on the brief), for appellant.

Robert J. Spiegel, Asst. U. S. Atty., Philadelphia, Pa. (W. Wilson White, U. S. Atty., Philadelphia, Pa., on the brief), for appellee.

Before GOODRICH, KALODNER and HASTIE, Circuit Judges.

KALODNER, Circuit Judge.

The defendant was found guilty and sentenced for violation of Section 145 (b)[1] of the Internal Revenue Code of 1939. He prosecutes this appeal upon the grounds that the evidence is insufficient to support the jury's verdict, that the District Court was without jurisdiction, that the trial judge erred in certain rulings on the admission of evidence and in certain instructions to the jury. Each of these issues was appropriately raised by the defendant in the District Court, and each was ruled upon by the trial judge.

We are of the opinion that the evidence does not support the verdict, and that the defendant must be acquitted.

The defendant was charged with wilfully and knowingly attempting to evade and defeat a large part of the taxes due and owing by the Colonial Products Company, a corporation of which he was president, in connection with its tax returns filed for its fiscal years ending July 31, 1948, July 31, 1949, and July 31, 1950. The substance of the evidence, tax-wise, is that the income of the corporation for each taxable year was understated in its returns for the taxable years involved through the device of treating capital expenditures as operating expenses, the full amount of which were deducted in the taxable years in which payment was made. Thus, the government contended that the corporation's expenses were incorrectly increased and its net income correspondingly decreased by charging off in a single year expenditures which should have been charged off over a period of years through depreciation.

The defendant does not contend that the corporation's accounts and its tax returns were correct. He does contend that there did not exist on his part a wilful and knowing attempt to evade taxes due, and that the government did not succeed in adducing evidence of this statutory requirement, or evidence from which its presence could be inferred.

The corporation, which was on the accrual basis, maintained a double entry system of bookkeeping in which all of its business transactions were recorded. The books were kept consistently since September, 1946, by one Kehr, who became bookkeeper following the death of his predecessor. Kehr either made the entries or caused them to be made. He determined how the various expenditures should be entered on the books, and, in

---

1. "* * * any person who willfully attempts in any manner to evade or defeat any tax imposed by this chapter or the payment thereof, shall, in addition to other penalties provided by law, be guilty of a felony * * *." 26 U.S.C., 1939 ed., § 145(b).

general, followed the same system throughout. The same certified public accountant, one Goldberg, since about 1940 or 1941, quarterly audited the corporation's books and annually prepared its income tax returns including those involved in this case. He did not, however, examine invoices, albeit a substantial amount of expenditures appeared unexplained in the "Purchases Sundry" column of the purchase journal. Apparently the accountant did not regard it to be within his duties to go behind the ledgers, and there is a dispute in the evidence as to whether his original employment was with the understanding that he would make only a "limited audit".

When, in 1951, the Internal Revenue Service investigated the corporation's returns, the defendant instructed the accountant to make available all of the corporation's records. When it became evident that there were errors, he engaged other accountants and had the corporation's income taxes recomputed by them. The defendant at all times cooperated, both during the investigation and the trial of the case, with the various governmental agents.

■■ The gravamen of the offense created by Section 145(b) is the wilful attempt to evade or defeat the tax. As stated by the Supreme Court in United States v. Ragen, 1942, 314 U.S. 513, 515, 62 S.Ct. 374, 86 L.Ed. 383:

> "In a prosecution for a wilful attempt to defeat and evade taxes, it is not sufficient to show merely that a lesser tax was paid than was due. It is essential to prove that the acts complained of were *wilfully done in bad faith and with intent to evade and defeat the tax*." (Emphasis supplied.)

And in Spies v. United States, 1943, 317 U.S. 492, 499, 63 S.Ct. 364, 87 L.Ed. 418, that Court indicated in a general way various forms of deceitful practices, such as dual sets of books, false entries or alterations, destruction of books and records, concealment of assets or income, and the like, which bespeak the neces-

sary evil intent. The conscious purpose to defraud proscribed by the statute does not include negligence, carelessness, misunderstanding or unintentional understatement of income. Holland v. United States, 1954, 348 U.S. 121, 139, 75 S.Ct. 127, 99 L.Ed. 150; United States v. Murdock, 1933, 290 U.S. 389, 54 S.Ct. 223, 78 L.Ed. 381. As was said in the latter case (290 U.S. at page 396, 54 S. Ct. at page 226):

> "Congress did not intend that a person, by reason of a bona fide misunderstanding as to his liability for the tax, * * * or as to the adequacy of the records he maintained, should become a criminal by his mere failure to measure up to the prescribed standard of conduct."

Despite the efforts of the government, the record fails to reveal probative evidence linking the defendant with the erroneous books and tax returns in any manner which should result in his conviction of the offense charged.

The defendant, notwithstanding the business experience attributed to him, left the books, bookkeeping and preparation of tax returns to the bookkeeper and the accountant. There is a dispute on the record between the bookkeeper and the accountant as to whether the accountant showed the bookkeeper how to go about his job. There is no evidence that the defendant interfered with either of them or with the books. On the contrary, the invoices and payments were taken care of by the bookkeeper in the ordinary course of business and he made the decisions as to classification of expenditures according to his own best judgment. The bookkeeper testified that the defendant did not give him directions to charge an expense to one item of account rather than to another. The accountant prepared the corporation's tax returns from the books of the corporation, and defendant caused them to be filed. He did not attribute the errors to the defendant or to any directions or information given by the defendant. His explanation was that he did not examine

the invoices, but these were available. Nothing was concealed. No information was refused.

It is not suggested that either the bookkeeper or the accountant was a participant in the crime charged. It is suggested by the government that it is incredible that the defendant did not know all along that capital expenditures were improperly treated; hence he knew the corporation's tax returns were false. This suggestion, however, does not arise from the evidence, but rather from unwillingness to believe that the evidence is true. Certainly the jury could accept or reject the testimony which exonerated the defendant of evil intent. But disbelief does not supply proof that the defendant participated in, directed or knew the books were kept incorrectly. Cf. Moore v. Chesapeake & Ohio Railway Co., 1951, 340 U.S. 573, 576, 71 S.Ct. 428, 95 L.Ed. 547. The government places heavy reliance upon the claim that at one time the defendant told a bank official visiting the premises in connection with a contemplated loan that the cost of a warehouse had been charged off as an expense. The defendant testified he relied upon a statement made to him by the accountant. It is indeed incredible that such a completely frank statement of an erroneous procedure should be made to one interested in the good faith of those administering the corporate affairs if bad faith was the motive of the defendant. In any event, neither the statement nor anything in evidence permits the conclusions that defendant knew substantially all of the corporate capital expenditures were charged off as operating costs and that the defendant understood the procedures employed by the bookkeeper and accountant were inadequate and erroneous.

■ We are left with the firm conviction that what the government established here is a case of mistake and such mistake, standing alone, is not sufficient to sustain a conviction.

As was said in Lurding v. United States, 6 Cir., 1950, 179 F.2d 419, 422:

" * * * The act here involved is the filing of an inaccurate return. In the complexity of successive tax laws, many thousands of taxpayers do that innocently. *Such filing is unlawful, however, only if made wilfully, with knowledge of its falseness and with intent to evade taxes. There is no presumption that may be drawn from the act itself—both knowledge and wilfulness must be established by independent proof, direct or circumstantial.*" (Emphasis supplied.)

■■ Here the direct evidence does not establish a wilfulness, knowledge of falseness and intent to evade taxes on the part of the defendant. Moreover, nowhere does the evidence disclose the positive type of conduct on the part of the defendant indicated by the Supreme Court in Spies v. United States, supra, as necessary to the felony specified by Section 145(b). Speculation and intuition cannot be substituted for proof. That is so even on the civil side in tax cases where the burden of proof upon the government is less than that which prevails in criminal tax cases. Cf. Sharon Herald Co. v. Granger, 3 Cir., 1952, 195 F.2d 890, 895. Moreover, this Court and others have already made it clear that reliance upon the conduct of employees in good faith is not a punishable event. Davis v. Commissioner, 10 Cir., 1950, 184 F.2d 86, 22 A.L.R.2d 967; Haywood Lumber & Min. Co. v. Commissioner, 2 Cir., 1950, 178 F.2d 769, 771; Hatfried v. Commissioner, 3 Cir., 1947, 162 F.2d 628, 633.

For the reasons stated the judgment of conviction and sentence will be reversed and the cause remanded to the District Court with direction to enter a judgment of acquittal.