MATTHEW S. HEPLER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hepler v. Commissioner
Docket No. 10572-87
United States Tax Court
T.C. Memo 1990-490; 1990 Tax Ct. Memo LEXIS 542; 60 T.C.M. (CCH) 735; T.C.M. (RIA) 90490; September 12, 1990, Filed *542 Decision will be entered under Rule 155. Sidney A. Soltz, for the petitioner. Richard A. Resnick, for the respondent. JACOBS, Judge. JACOBS
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined a deficiency of $ 20,040.78 in petitioner's Federal income tax for 1983 and additions to tax of $ 10,020.39 under section 6653(b)(1)[1] and 50 percent of the interest due on the entire underpayment under section 6653(b)(2). By amendment to his answer, respondent increased the deficiency by $ 2,134.78 and asserted corresponding increased additions to tax under section 6653(b)(1) and (b)(2). Respondent's determinations are based on the omission of $ 57,848 of income (which petitioner's former wife allegedly embezzled from Royal Trust Bank) on a joint 1983 tax return which petitioner filed with his then wife. The tax liability of petitioner's former wife is not in dispute; she did not petition the Court. Petitioner does not contest the amount of the deficiency. [2] He concedes that the embezzled money *543 was not reported on the joint return. He also concedes that he failed to report approximately $ 4,000 which he received from several odd jobs. Petitioner, however, claims tax relief as an innocent spouse. Accordingly, the issues for decision are: (1) whether petitioner qualifies for innocent spouse status under section 6013(e); and (2) whether he is liable for additions to tax for fraud under section 6653(b)(1) and (2). We conclude that petitioner is entitled to innocent spouse relief and that he is not liable for the additions to tax for fraud; our reasons for these conclusions are hereinafter set forth. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulation of facts and accompanying exhibits are incorporated herein by this reference. Petitioner was a resident of Miami, Florida, at the time his petition was filed. Petitioner married Judith Chevis (Mrs. Hepler) in October 1982. At the time, petitioner *544 was 24 years old; Mrs. Hepler was several years older. Petitioner is a high school graduate and attended two years of college, majoring in electronics. He has no bookkeeping training. During 1983, petitioner was employed by Motorola Incorporated as an electronic technician; he earned $ 13,239.02 in wages and $ 210.49 from an employee savings and profit sharing fund. During 1983, Mrs. Hepler was employed as a bank teller with three different banks. From January 31, 1983 to March 31, 1983, she was employed by Royal Trust Bank (Royal Trust) in Ft. Lauderdale, Florida. From August 15th to September 9th, she was employed by Sun Bank of Florida (Sun Bank), and from late September to mid-October, by Southern Bank of Broward County (Southern Bank). During the two months Mrs. Hepler was employed by Royal Trust, the bank reported as missing four separate night deposits totaling $ 58,848.09. On March 31, 1983, Mrs. Hepler confessed to the Federal Bureau of Investigation (F.B.I.) that she stole $ 1,000 of the missing money; she made restitution to Royal Trust of that amount on April 4, 1983. Her employment was terminated as a result of the incident. Mrs. Hepler informed petitioner that *545 she resigned because Royal Trust wanted her to transfer to its Miami branch which would require her to commute 60 miles a day. She did not inform petitioner that she had confessed to stealing money, nor did she tell him about the restitution. Subsequently, she worked for Sun Bank; she was fired after working there only a few weeks. Thereafter, she was employed by Southern Bank. While employed by Southern Bank, Mrs. Hepler told petitioner that a co-worker was selling drugs from a teller window; petitioner advised her to quit. On October 19, 1983, Mrs. Hepler was arrested at her home and charged with embezzling approximately $ 21,500 from Southern Bank. Petitioner returned home at the same time Mrs. Hepler was being driven away in a police car. He did not have an opportunity at the time to speak with her. The next day, Mrs. Hepler told petitioner that she was innocent and had been framed by the co-worker. Before her arrest and pursuant to a search warrant, the police searched petitioner and Mrs. Hepler's one bedroom apartment. In the bedroom, the police found $ 10,700 in cash, together with a $ 5,000 cashier's check and a $ 1,000 money order, both of which were missing from Southern *546 Bank. Petitioner was aware that his wife kept cash in the apartment, although he did not know the amount. To explain the presence of the cash hoard, Mrs. Hepler told petitioner that $ 700 came from loans and gifts from her parents and that $ 10,000 came from her savings account for use as a down payment in connection with their contemplated purchase of a condominium. Mrs. Hepler told petitioner that to increase their chance of obtaining a condominium mortgage loan [3], "we should show a lot of activity in our checking and savings account." Thus, Mrs. Hepler withdrew cash from a savings account and deposited it into her checking account, and thereafter, withdrew cash from her checking account and deposited it into her savings account. Although petitioner knew that his wife was transferring funds between bank accounts, he did not know the amount being circulated. In December 1984, a *547 jury acquitted Mrs. Hepler of embezzling funds from Southern Bank. In July 1984, Mrs. Hepler's problems with Royal Trust resurfaced when she was arrested and charged with stealing three of the four night deposits discovered missing in 1983. Prior to July 1984, petitioner had not been aware of the missing deposits from Royal Trust. Although she originally pled not guilty to the July 1984 charges brought against her in connection with the missing Royal Trust deposits, in December 1987, Mrs. Hepler changed her plea to guilty of grand theft in the second degree. As a result of this changed plea, she acknowledged that the theft was in excess of $ 20,000. (Mrs. Hepler maintains that she changed her plea to guilty as part of a plea bargain arrangement.) The Heplers had domestic disputes from the inception of their marriage; they separated on several occasions. Petitioner and Mrs. Hepler had different interests. Petitioner enjoyed music and devoted a significant amount of his time to composing songs and playing the guitar for a local band, whereas Mrs. Hepler enjoyed shopping and attending to financial matters. Because of their different interests, Mrs. Hepler and petitioner led separate *548 lives. The Heplers were divorced in 1986. Throughout their marriage, petitioner and Mrs. Hepler maintained separate bank accounts in order to pay for their individual expenses. Although petitioner and Mrs. Hepler opened a joint checking account at Southeast Bank (where she had been employed from February through September 1982), both she and petitioner treated this account as belonging solely to Mrs. Hepler. She made all of the deposits, and other than three checks, signed all of the checks drawn on this account. Because petitioner contributed to the payment of their joint bills, Mrs. Hepler occasionally deposited petitioner's paycheck into the Southeast Bank account. In addition, Mrs. Hepler deposited some of the embezzled funds into the Southeast Bank account. Mrs. Hepler maintained the couple's financial records, paid almost all of their bills, and prepared their joint 1983 tax return. In his notice of deficiency, respondent determined that petitioner and Mrs. Hepler received unreported embezzlement income from Royal Trust in the amount of $ 57,848.00 ($ 58,848.09 embezzled minus $ 1,000 paid back to the bank = $ 57,848.09, and then rounded). He further determined that petitioner *549 owed additions to tax for fraud. OPINION 1. Innocent Spouse
When a husband and wife file a joint return, each is jointly and severally liable for the amount of tax due. Sec. 6013(d)(3). However, section 6013(e) relieves an innocent spouse of joint liability if he or she proves that: (1) a joint return was made for the taxable year; (2) on such return there is a substantial understatement of tax attributable to grossly erroneous items of the other spouse; (3) he or she did not know, and had no reason to know, of the substantial understatement when he or she signed the return; and (4) after consideration of all the facts and circumstances, it would be inequitable to hold him or her liable for the deficiency in income tax attributable to such substantial understatement. Sec. 6013(e)(1), as amended by The Deficit Reduction Act of 1984, Pub. L. 98-369, sec. 424(a), 98 Stat. 801-802; Flynn v. Commissioner, 93 T.C. 355, 359 (1989). The spouse claiming entitlement to innocent spouse relief has the burden of proving that he has satisfied each statutory requirement of section 6013(e); a failure to prove any one of the statutory elements will prevent him from qualifying for relief. Bokum v. Commissioner, 94 T.C. 126, 128 (1990); *550 Rule 142(a). The parties agree that petitioner and Mrs. Hepler filed a joint return for 1983, and that on such return there is a substantial understatement of tax attributable to a grossly erroneous item of Mrs. Hepler, i.e., the money embezzled from Royal Trust which was omitted from their joint return. Thus, the first two requirements of section 6013(e) are not contested. Section 6013(e)(1)(C)
The first element in dispute requires petitioner to establish that in signing the return, he did not know, and had no reason to know, that there was a substantial understatement of tax. Sec. 6013(e)(1)(C). Entitlement to innocent spouse relief can be considered on an item by item basis. [4]Purcell v. Commissioner, 86 T.C. 228, 235 n.3 (1986), affd. 826 F.2d 470 (6th Cir. 1987). Respondent determined petitioner's deficiency based in part upon Mrs. Hepler's embezzlement from Royal Trust. Hence, our focus is upon what petitioner knew or should have known about his wife's embezzlement from that institution. Petitioner testified at trial that he was *551 not aware of his wife's embezzlement from Royal Trust until she was formally charged in July 1984 (which was subsequent to the date that the 1983 return was filed). [5] We found petitioner to be a highly credible witness; we therefore accept his testimony and find that, at the time he signed the 1983 return, petitioner had no actual knowledge of the substantial understatement of tax attributable to his wife's embezzlement from Royal Trust. The more difficult determination is whether petitioner had reason to know of his wife's embezzlement. In determining whether petitioner had reason to know of the substantial understatement of tax due to the omission of the embezzled income, the test is whether a reasonably prudent person under petitioner's circumstances at the time of signing the return could be expected to know that the tax liability stated was erroneous or that further investigation was warranted. Bokum v. Commissioner, 94 T.C. at 148; *552 Stevens v. Commissioner, 872 F.2d 1499, 1505 (11th Cir. 1989), affg. a Memorandum Opinion of this Court. Significant factors in determining whether a spouse had reason to know of a substantial understatement of tax include: (1) the alleged innocent spouse's participation in business affairs or bookkeeping ( Quinn v. Commissioner, 62 T.C. 223 (1974), affd. 524 F.2d 617 (7th Cir. 1975)); (2) the guilty spouse's refusal to be forthright concerning the couple's income ( Adams v. Commissioner, 60 T.C. 300 (1973)); and (3) the presence of unusual or lavish expenditures ( Mysse v. Commissioner, 57 T.C. 680, 699 (1972)). As a corollary to unusual or lavish expenditures, an increase in a couple's general standard of living may also put a spouse on notice of unreported income. Mysse v. Commissioner, supra at 698-699; and Flynn v. Commissioner, 93 T.C. at 366. The first of the aforementioned three factors requires us to consider petitioner's participation in the family's business activities and decisions. Mrs. Hepler was the couple's financial manager; she was, in her words, "the banker." Petitioner had little interest in financial matters and no bookkeeping training. He was an unsophisticated *553 young man. Although petitioner was a signatory on the Southeast Bank "joint" checking account (into which some of the embezzled funds were deposited), both petitioner and Mrs. Hepler considered the account to belong solely to Mrs. Hepler. She exercised dominion and control over it. Mrs. Hepler, and not petitioner, retained possession of the checkbook. Only she knew the amount in the account. We therefore find that petitioner had no knowledge, and had no way of knowing, of any increase in the balance of the Southeast Bank account resulting from Mrs. Hepler's depositing the embezzled funds. We make such finding notwithstanding that: (1) the account was nominally a joint account; and (2) petitioner wrote three checks off the account. (During 1983, 112 checks were drawn off the account. Mrs. Hepler permitted petitioner to write two checks off the account to pay for car expenses. The third check was a signed counter-check, written by petitioner at Mrs. Hepler's direction, to bail her out of jail.) The second of the three factors is the guilty spouse's refusal to be forthright concerning the couple's income. Mrs. Hepler was not forthright. She failed to inform petitioner of the *554 F.B.I.'s investigation concerning the embezzled bank funds from Royal Trust and her subsequent restitution. She lied to her husband, telling him that she left Royal Trust because she did not wish to commute to Miami so that he would not know or suspect that she was embezzling money. The "reason to know" standard imposes a "duty of inquiry" on the spouse claiming relief. Stevens v. Commissioner, supra at 1505. One cannot turn a blind eye to facts that might give reason to know of unreported income. Terzian v. Commissioner, 72 T.C. 1164, 1170 (1979). Here, petitioner made inquiries. He inquired about her arrest for embezzlement from Southern Bank; she told him that she was innocent and that a fellow employee had framed her. He inquired as to the source of the money she kept in their home; she told him it came from her savings account and from her parents. He inquired about her employment termination from Royal Trust, and she told him she left because the bank wanted her to work in Miami. Further, in response to petitioner's questioning why Mrs. Hepler continued working as a bank teller inasmuch as she always had problems, she explained that "the rewards are greater than the problems; *555 the problems always work out." Although the Heplers were not always on good terms, nothing in the record indicates that petitioner was aware of his wife's proclivity for deceitfulness. In 1983, petitioner was in love with his wife; he trusted her word. We deem it reasonable for one spouse to believe in the innocence of the other. Because Mrs. Hepler provided petitioner with reasonable answers to his inquiries regarding her employment terminations, the source of the large amount of cash kept in their apartment, and her arrest, we find that petitioner satisfied his duty of inquiry. The third factor is the presence or absence of unusual or lavish expenditures. The record does not disclose unusual or lavish expenditures of a type which would apprise petitioner that income had been omitted from their joint 1983 income tax return. Petitioner's standard of living did not increase during 1983. To the contrary, the record establishes that petitioner and his wife lived modestly in a one bedroom apartment which they rented for $ 300 per month and incurred electric and telephone expenses averaging $ 150 per month. Throughout 1983, petitioner's other weekly expenses were less than $ 100. In *556 summary, petitioner did not participate in the family's business affairs, Mrs. Hepler consistently lied to petitioner as to their financial affairs, and petitioner and Mrs. Hepler made no unusual or lavish expenditures in 1983. Thus, none of the factors are present which would indicate petitioner had a reason to know of the unreported embezzlement income which resulted in a substantial understatement of tax for 1983. Section 6013(e)(1)(D)
In assessing the equity in holding a spouse liable, we consider: (1) whether the spouse claiming relief significantly benefited from the grossly erroneous item attributable to the culpable spouse, Estate of Krock v. Commissioner, 93 T.C. 672, 677 (1989); (2) whether the spouse claiming relief has been deserted by, or divorced or separated from, the culpable spouse, section 1.6013-5(b), Income Tax Regs.; and (3) probable future hardships that would be visited upon petitioner if he is not relieved from liability. Sanders v. Commissioner, 509 F.2d 162, 171 n.16 (5th Cir. 1975). [6]
Respondent *557 posits that it would not be inequitable to hold petitioner liable for the portion of the deficiency attributable to Mrs. Hepler's embezzlement income because petitioner benefited from the money embezzled by his wife in 1983. We disagree. In our view, petitioner did not significantly benefit from his wife's embezzlement income. He and his wife continued to reside in their rented one bedroom apartment during her criminal activities and thereafter. Although they applied for a mortgage loan in an attempt to purchase a condominium, the loan, along with the purchase, never materialized. Mrs. Hepler's department store purchases consisted of items personal to her. In any event, these purchases appear to be in the nature of normal support, and normal support is not considered a significant benefit. Sec. 1.6013-5(b), Income Tax Regs.
Respondent argues that petitioner benefited from the unreported income because at approximately the same time the embezzlements occurred from Royal Trust, petitioner was able to save the entire amount of his paychecks. Petitioner explained that he was able to save his paychecks because in February and March of 1983, he sold some of his musical equipment. *558 From the sale, he received $ 5,200 in cash. He deposited $ 2,000 of the $ 5,200 into his bank account; he used the remaining $ 3,200 to pay his living expenses. Petitioner and his wife were divorced in 1986. We have little doubt that petitioner would suffer hardship if forced to pay for his wife's indiscretions. Since he did not receive any benefit from his wife's embezzlement, we conclude that holding him liable for his wife's deceit would be inequitable. 2. Fraud -- Section 6653(b) Additions to Tax
In his notice of deficiency and amended answer, respondent determined that petitioner's failure to report his wife's embezzlement income and $ 4,000 in compensation which he received from several odd jobs was fraudulent with the intent to evade tax. Respondent has the burden of proving fraud by clear and convincing evidence. Secs. 6653(b) and 7454(a); Rule 142(b). To meet this burden, respondent must show that petitioner intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes. Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968); Rowlee v. Commissioner, 80 T.C. 1111 (1983). The existence of fraud *559 is a question of fact to be resolved upon consideration of the entire record. Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978); Estate of Pittard v. Commissioner, 69 T.C. 391 (1977). Fraud is never presumed. Beaver v. Commissioner, 55 T.C. 85, 92 (1970); Otsuki v. Commissioner, 53 T.C. 96 (1969). However, fraud may be proven by circumstantial evidence because direct proof of the taxpayer's intent is rarely available. Rowlee v. Commissioner, supra.The taxpayer's entire course of conduct may be examined to establish the requisite fraudulent intent. Stone v. Commissioner, 56 T.C. 213, 223-224 (1971); Otsuki v. Commissioner, supra at 105-106. The intent to conceal or mislead may be inferred from a pattern of conduct. Spies v. United States, 317 U.S. 492, 499 (1943). A pattern of consistent underreporting of income, especially when accompanied by other circumstances showing an intent to conceal, justifies the inference of fraud. Holland v. United States, 348 U.S. 121, 137 (1954); Otsuki v. Commissioner, supra . However, the mere failure to report income is not sufficient to establish fraud. Merritt v. Commissioner, 301 F.2d 484, 487 (5th Cir. 1962). *560 Fraud may not be found under "circumstances which at most create only suspicion." Davis v. Commissioner, 184 F.2d 86, 87 (10th Cir. 1950); Katz v. Commissioner, 90 T.C. 1130, 1144 (1988). Fraud is not imputed from one spouse to another. Where a joint income tax return is filed, respondent must prove fraud as to each spouse charged with liability for the addition to tax. Sec. 6653(b)(4); Stone v. Commissioner, supra at 227-228. Mrs. Hepler is not before the Court, and her fraudulent conduct in failing to report the embezzled funds is not transferred to petitioner. Clearly, petitioner was not an active participant in his wife's embezzlement activities. He learned of his wife's embezzlement from Royal Trust no earlier than July 1984, a year subsequent to the tax year in issue, and after the 1983 return was filed. Petitioner was neither exempt nor spared from her deceptions. Mrs. Hepler's fraudulent intent coupled with petitioner's actions simply do not constitute fraud as to petitioner within the meaning of section 6653(b). With respect to the $ 4,000 of income which petitioner omitted from the 1983 return, he concedes that he failed to report it but contends that his failure was *561 "an honest mistake which may have been due to carelessness or negligence but not fraud." While petitioner acted imprudently in failing to correct his tax return following the discovery of the omitted income and handling his income tax audit, we believe such actions, though negligent, were attributable to his lack of maturity and experience. It is not enough that respondent makes us suspicious of petitioner's actions. "The conscious purpose to defraud proscribed by the statute does not include negligence, carelessness, misunderstanding or unintentional understatement of income." United States v. Pechenik, 236 F.2d 844, 846 (3d Cir. 1956). Respondent's evidence must be clear and convincing. Here, it is not; therefore, we hold for petitioner on this issue. To reflect the foregoing and the concession made by petitioner, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect for the year in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Petitioner does not dispute that his former wife embezzled money from Royal Trust; she, however, maintains her innocence. For purposes hereof, we assume the embezzlement in fact occurred, and the amount of omitted income for 1983 was $ 57,848.↩
3. In August 1983, petitioner and his wife applied for a $ 50,000 mortgage loan from Commonwealth Savings and Loan Association to purchase a $ 52,990 condominium. Although petitioner signed the loan application, Mrs. Hepler was responsible for its preparation. In October 1983, their loan request was denied.↩
4. Obviously, petitioner is not claiming innocent spouse relief with respect to the omitted $ 4,000 of income which he earned in 1983 from odd jobs.↩
5. Section 6013(e)(1)(C)↩ refers to knowledge at the "time of signing the return." Events occurring after the return was signed are irrelevant. Thus, Mrs. Hepler's December 1987 conviction does not help respondent, nor does her 1984 acquittal aid petitioner.
6. Fifth Circuit cases decided on or before September 30, 1981, are precedent for the Eleventh Circuit, the court to which this case is appealable. Bonner v. City of Prichard, Alabama, 661 F.2d 1206↩ (11th Cir. 1981).