CHAP BRYANT, DECEASED, AND MARY BRYANT, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bryant v. Commissioner
Docket No. 13784-90
United States Tax Court
T.C. Memo 1992-427; 1992 Tax Ct. Memo LEXIS 451; 64 T.C.M. (CCH) 291; July 28, 1992, Filed *451 Decision will be entered under Rule 155. For Petitioners: Fred K. Persons
For Respondent: Patricia A. Evans. COLVIN
COLVIN
MEMORANDUM FINDINGS OF FACT AND OPINION COLVIN, Judge: Respondent determined deficiencies in income taxes and additions to tax for petitioners as follows: Additions to Tax
Sec.
Sec.
Sec.
Year
Deficiency
6653(b)(1)(A)
6653(b)(1)(B)
6661
1986
$   999.17
$   749.38
[1]
--  1987
17,872.69
13,404.52
[1]
$ 4,468.17
Petitioners booked bets for customers through an illegal gambling house in the years at issue. After concessions, the issues for decision are: 1. Whether respondent's determination that petitioners had unreported gambling activity income of $ 3,443.69 for 1986 and $ 53,337.54 for 1987 should be sustained. We hold that it should. 2. Whether petitioners are liable for additions to tax for fraud in 1986 and 1987 under section 6653(b)(1)(A) and (B), and *452 for substantial understatement of tax in 1987 under section 6661. We hold that they are. The Court has also filed Williams v. Commissioner, T.C. Memo. 1992-428, and Webster v. Commissioner, T.C. Memo. 1992-220, which involved other taxpayers who were associated with the illegal gambling business at issue in this case. Section references are to the Internal Revenue Code in effect for the years at issue. Rule references are to the Tax Court Rules of Practice and Procedure, and, where noted, the Federal Rules of Evidence. FINDINGS OF FACT 1. Petitioners
Petitioners were married and resided in Flint, Michigan, when they filed their petition. Mr. Bryant died on January 23, 1991, before the trial in this case was held. During the years at issue, petitioners owned and operated Fish King of Flint, a fish market and restaurant. 2. Gambling Activities
a. Mertis Washington's Gambling House
In 1986 and 1987, petitioners took bets from customers and placed them with an illegal gambling house operated by Mertis Washington (Washington) in Flint, Michigan. Petitioners received money from bettors, gave 75 percent of the money *453 to the gambling house, and kept 25 percent as a commission. Petitioners failed to report any income from this activity. Washington received money from people betting on a particular three- or four-digit number. Some people placed bets through "runners" who transported bet slips and money to the house for tabulation. Others placed them through telephone calls ("call-ins"). Each person who placed bets with Washington was identified by a code name or a "book number". Washington kept records of the bets he received,including the number selected by the bettor, the amount of the bet, and the book number of the person who placed the bet. At the end of each week, the gross amount of the bets (the "tops") for each book number was totaled. Then, 75 percent of this amount was calculated to determine what each book number owed Washington (the "bottoms"). Washington's records did not differentiate between bets for which the person making the bet received a commission, and bets for which that person did not receive a commisison (including personal bets), if any. Washington used the Michigan and Illinois lotteries to determine the winning numbers. When there was a winner, Washington's *454 employees referred to a spiral notebook (labeled "PHONE BOOK"). The phone book contained the book numbers, names, and telephone numbers of people who booked bets with Washington. After locating the book number of the person who placed the winning bet, the employee called the phone number listed and asked for the name appearing next to the book number. Washington and his employees also used the notebook when calling people to let them know how much they owed Washington. Paulette Guice (Guice) was one of Washington's employees who kept the books and records for the gambling business. Guice worked 6 days a week. Washington testified in United States v. Croffe, No. 88-50031-20 (E.D. Mich., July 18, 1988), about his gambling activities. He died on September 10, 1991, before the trial in this case. b. Petitioners' Involvement
Petitioners were involved with Washington's numbers business for approximately 1 year beginning in 1986. They each had their own book number: Mrs. Bryant's number was 527 and Mr. Bryant's number was 4800. Petitioners took bets at the Fish King restaurant. Someone picked up the bet slips at the restaurant and brought them to Washington. Petitioners *455 owed Washington 75 percent of the total amount of bets placed on their book numbers. Petitioners sometimes "hit" on the numbers they bet. Washington paid petitioners cash for their winnings if they did not owe him anything; otherwise, he subtracted the winning amount from their running account with him. Petitioners did not keep copies of betting slips or other records of their betting activities. In 1988, petitioners were indicted and pled guilty to the charge of conducting an illegal gambling business. They were placed on probation for this offense. In July 1988, Mr. Bryant testified in United States v. Croffe, supra, about his involvement in gambling activities. Petitioners did not report any income from their gambling activities on their income tax returns for 1986 or 1987. OPINION 1. Evidentiary Matters
We first consider three evidentiary issues raised by petitioners concerning the admissibility of certain evidence. a. Former testimony of Mertis Washington
Respondent offered Mertis Washington's testimony in United States v. Croffe, supra, into evidence. Petitioners argue that Washington's testimony is inadmissible hearsay. They point out *456 that their attorney did not have a chance to cross-examine Washington and assert that Maple Croffe, the defendant in that case, is not a predecessor in interest to petitioners. Rule 804(b) of the Federal Rules of Evidence provides several exceptions to the hearsay rule if the declarant is unavailable, which Washington indisputably was. Under rule 804(b)(1) of the Federal Rules of Evidence, former testimony of a declarant is admissible if the party against whom it is now offered, or a predecessor in interest, had an opportunity and similar motive to develop the declarant's testimony. Ms. Croffe and petitioners were indicted for their alleged involvement in illegal gambling activities. Washington testified about the gambling activities at Ms. Croffe's trial. We believe that Ms. Croffe, thought her attorney at the Croffe trial, had an opportunity and similar motive to petitioners' to cross-examine Washington at the Croffe trial. Clay v. Johns-Manville Sales Corp., 722 F.2d 1289, 1294-1295 (6th Cir. 1983). Accordingly, Washington's testimony is admissible under rule 804 (b)(1) of the Federal Rules of Evidence.
b. Former Testimony of Chap Bryant
*457 Respondent offered Mr. Bryant's testimony at the Croffe trial. Petitioners argue that it should not be admitted because their attorney did not have the opportunity to cross-examine him about how his statements relate to this case. A statement is not hearsay if it is "offered against a party and [it] is * * * the party's own statement in either an individual or a representative capacity." Fed. R. Evid. 801(d)(2)(A). A statement under rule 801(d)(2)(A) of the Federal Rules of Evidence is admissible even when the party is deceased at the time of trial. Savarese v. Agriss, 883 F.2d 1194, 1200-1201 (3d Cir. 1989); Pollack v. Metropolitan Life Ins. Co., 138 F.2d 123, 125 (3d Cir. 1943). We believe Mr. Bryant is a party for purposes of rule 801(d)(2)(A) of the Federal Rules of Evidence and, thus, we admit his former testimony into evidence. c. Testimony of Paulette Guice
Respondent examined Guice about the operations of Washington's gambling house, and records she used while employed there. Petitioners dispute both Guice's qualifications to testify about Washington's business records and whether the records are admissible as business *458 records under rule 803(6) of the Federal Rules of Evidence. We believe Guice was sufficiently familiar with Washington's business and its records to be qualified to testify about them pursuant to rule 803(6) of the Federal Rules of Evidence.United States v. Colyer, 571 F.2d 941, 947 (5th Cir. 1978); Fernandez v. Chios Shipping Co., 542 F.2d 145, 154 (2d Cir. 1976). We also believe that the records are admissible as business records under rule 803(6) of the Federal Rules of Evidence.
2. Unreported Income
The next issue for decision is whether petitioners had unreported gambling activity income of $ 3,443.69 for 1986 and $ 53,337.54 for 1987. Gross income includes "all income from whatever source derived," including illegal sources. Sec. 61; Rutkin v. United States, 343 U.S. 130, 137 (1952). Respondent's determination is presumed to be correct. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Petitioners claim that they placed personal bets (i.e., their own bets), as well as bets for others, with Washington, but they have no records to corroborate the extent, if any, of such bets. *459 Petitioners would have had income on their personal bets to the extent of their net winnings. Mrs. Bryant testified at the Croffe trial that she was paid 20 to 25 percent for placing nonpersonal bets. She testified at the trial in this case, however, that the nonpersonal bets she placed were for her employees and that she did not receive a commission for any of these bets. Mr. Bryant testified at the Croffe trial that he received 25-percent profit for writing bet slips for others. We do not find credible Mrs. Bryant's testimony in this case that she did not receive a profit from her participation in the gambling business. Petitioners did not call any witnesses or otherwise corroborate Mrs. Bryant's testimony, and they failed to explain why Mrs. Bryant's testimony in this case conflicts with her testimony in Croffe. Petitioners did not keep records of their gambling activities. They have not offered any evidence to show to what extent they placed personal bets or other bets for which they did not receive a commission. Petitioners say they sometimes won on bets they placed on their own behalf, but they failed to produce any records of these purported winnings, and *460 they did not report any winnings on their income tax returns for the years at issue. Washington's records show the amount of bets placed under each of petitioners' book numbers for the years at issue. Respondent determined that the total amount of bets under petitioners' book numbers in Washington's records was $ 13,774 in 1986 and $ 213,352 in 1987. Respondent determined that petitioners' 25-percent share of those bets was $ 3,443.69 in 1986 and $ 53,337.54 in 1987. Washington's records provide a credible basis for determining petitioners' income from booking bets in 1986 and 1987. Because petitioners have offered no credible evidence to dispute respondent's determinations, and because they kept no records of their gambling activities from which we can decide their income from gambling activities, we sustain respondent's determinations. Accordingly, we conclude that petitioners had gambling activity income in the amount of $ 3,443.69 for 1986 and $ 53,337.54 for 1987. 3. Fraud
The next issue for decision is whether petitioners are liable for additions to tax for fraud in 1986 and 1987 under section 6653(b)(1)(A) and (B). For purposes of section 6653(b), fraud means *461 "actual, intentional wrongdoing," Mitchell v. Commissioner, 118 F.2d 308, 310 (5th Cir. 1941), revg. 40 B.T.A. 424 (1939); or the intentional commission of an act or acts for the specific purpose of evading a tax believed to be owing, Webb v. Commissioner, 394 F.2d 366, 377 (5th Cir. 1968), affg. T.C. Memo. 1966-81; McGee v. Commissioner, 61 T.C. 249, 256 (1973), affd. 519 F.2d 1121 (5th Cir. 1975). Fraud "does not include negligence, carelessness, misunderstanding or unintentional understatement of income." United States v. Pechenik, 236 F.2d 844, 846 (3d Cir. 1956). Respondent has the burden of proving fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b); Castillo v. Commissioner, 84 T.C. 405, 408 (1985); Stone v. Commissioner, 56 T.C. 213, 220 (1971). Respondent must establish: (1) That petitioner has underpaid taxes for each year, and (2) that some part of the underpayment was due to fraud. Sec. 6653(c); Hebrank v. Commissioner, 81 T.C. 640, 642 (1983). Fraud must be established *462 by affirmative evidence. Beaver v. Commissioner, 55 T.C. 85, 92 (1970). Fraud, however, may be inferred from any conduct, the effect of which would be to mislead or conceal, Spies v. United States, 317 U.S. 492, 499 (1943), or otherwise prevent the collection of taxes, Korecky v. Commissioner, 781 F.2d 1566, 1568 (11th Cir. 1986), affg. T.C. Memo. 1985-63; or where an entire course of conduct establishes the necessary intent, Patton v. Commissioner, 799 F.2d 166, 171 (5th Cir. 1986), affg. T.C. Memo. 1985-148; Kotmair v. Commissioner, 86 T.C. 1253, 1260 (1986); Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983); Stone v. Commissioner, 56 T.C. 213, 224 (1971). The courts have developed a number of objective indicators, or "badges", which tend to establish fraud, including: understatement of income; inadequate records; implausible or inconsistent explanations of behavior; engaging in illegal activities; and attempting to conceal illegal activities. Bradford v. Commissioner, 796 F.2d 303, 307-308 (9th Cir. 1986), *463 affg. T.C. Memo. 1984-601; Recklitis v. Commissioner, 91 T.C. 874, 910 (1988). Petitioners have exhibited each of these badges of fraud. They did not report the income from their gambling activities on their 1986 or 1987 returns. They did not keep copies of the betting slips or any other records from these activities. At trial, Mrs. Bryant gave testimony about whether she received a commission for placing bets which was inconsistent with statements she made at the Croffe trial. Petitioners each were indicted and pled guilty to conducting an illegal gambling business. Finally, petitioners' failure to report income from their gambling activities indicates that they tried to conceal the illegal activities. We conclude that petitioners' conduct clearly and convincingly shows that they have committed fraud. Accordingly, they are liable for additions to tax under section 6653(b)(1)(A) and (B) for 1986 and 1987. 3. Section 6661
The final issue for decision is whether petitioners are liable for an addition to tax for substantial understatement of tax under section 6661 for 1987. Section 6661(a) imposes an addition to tax of 25 percent *464 on any underpayment attributable to a substantial understatement of income tax in any taxable year. A substantial understatement exists if in any year the amount of the understatement exceeds the greater of $ 5,000 or 10 percent of the amount required to be shown on the return. Sec. 6661(b)(1). An understatement, for purposes of this addition to tax, is the amount by which the amount required to be shown on the return exceeds the amount actually shown on the return. Sec. 6661(b)(2); Tweeddale v. Commissioner, 92 T.C. 501, 505 (1989); Woods v. Commissioner, 91 T.C. 88, 94 (1988). If the taxpayer has substantial authority for his tax treatment of any item on the return, the understatement is reduced the the amount attributable thereto. Sec. 6661(b)(2)(B)(i). Similarly, the amount of the understatement is reduced for any item adequately disclosed either on the taxpayer's return or in a statement attached to the return. Sec. 6661(b)(2)(B)(ii); sec. 1.6661-4(b) and (c), Income Tax Regs.
Petitioners have not argued that either of the reductions to this addition to tax applies to them. Petitioners have not sustained their burden of proving *465 that they are not liable for additions to tax under section 6661. Accordingly, if, after respondent's determination, the amount of the understatement for 1987 exceeds the greater of $ 5,000 or 10 percent of the amount required to be shown on the return, petitioners are liable for the section 6661 addition to tax for that year. Accordingly, Decision will be entered under Rule 155. Footnotes
1. Fifty percent of the interest due on the portion of the underpayment attributable to fraud.↩