PETER G. EDWARDS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Edwards v. Commissioner
Docket No. 3598-93
United States Tax Court
T.C. Memo 1995-77; 1995 Tax Ct. Memo LEXIS 78; 69 T.C.M. (CCH) 1926; February 16, 1995, Filed *78 Decision will be entered for respondent. Peter G. Edwards, pro se. For respondent: Josh Ungerman. WRIGHT
WRIGHT
MEMORANDUM FINDINGS OF FACT AND OPINION WRIGHT, Judge: Respondent determined deficiencies in and additions to petitioners 1987 and 1988 Federal income tax as follows: Additions to Tax Year
Deficiency
Sec. 6653(b)(1)(A)
Sec. 6653(b)(1)(B)
Sec. 6661
1987
$ 19,473
$ 14,605
50 percent of
$ 4,868
the interest
due on $ 19,480
Sec. 6653(b)(1) 1988
32,672  $ 24,504
-0-  8,168  Unless otherwise indicated, all statutory references are to the Internal Revenue Code in effect during the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. After concessions, the sole issue for our consideration is whether petitioner is subject to additions to tax for fraud under section 6653(b)(1)(A) and (B) for taxable year 1987, and under section 6653(b)(1) for taxable year 1988. We hold that he is. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein. At the time the petition was filed, petitioner resided in Oldsmar, *79 Florida. Petitioner is a graduate of the University of Houston. During taxable years 1987 and 1988, petitioner was employed by Variety Seafoods, Inc. (Variety), as its vice president of sales and marketing. Variety is a shrimp processor and packer. Petitioner was also a 50-percent partner in R & L Seafoods (R & L) during the years at issue. R & L is a seafood broker. During 1987 and 1988, Variety paid R & L a brokerage commission. As part of his compensation, Variety paid petitioner quarterly bonuses. On April 30, 1987, petitioner executed a memorandum to the president of Variety requesting that the bonus payments be made directly to R & L instead of to petitioner. Following the execution of the memorandum, Variety paid the bonuses to R & L, and R & L issued checks to petitioner in the amount of his distributive share of the bonuses. Petitioner omitted from gross income the entire amount of the bonuses received subsequent to the issuance of the memorandum. The amounts omitted from gross income for taxable years 1987 and 1988 are $ 16,808 and $ 39,764, respectively. Petitioner also omitted an additional $ 892.29 of income received from R & L during 1987. Further, petitioner *80 failed to report income from the following additional sources during 1987 and 1988: Source
Amount.
Mesa Brokerage
$ 18,783.88
Rymer Shrimp
2,272.00
Sun Bank of Tampa
143.00
Merrill Lynch
12,965.00
Total  $ 34,163.88
On Schedule C, for taxable years 1987 and 1988, petitioner claimed deductions in the amounts of $ 32,315 and $ 35,285, respectively. Of these amounts, respondent disallowed $ 27,315 and $ 30,285, [1] respectively. The disallowed amounts are composed of deductions claimed for personal expenses, expenses incurred in years other than the years at issue, items deducted twice on petitioner's income tax returns, and expenses incurred that were also reimbursed by Variety, petitioner's employer. Additionally, in support of his Schedule C expenses for 1987 and 1988, petitioner submitted several altered documents. *81 Petitioner's 1987 return reflects a total tax in the amount of $ 7 and a refund due in the amount of $ 16,350. Petitioner's 1988 return reflects a total tax in the amount of $ 2,141 and a refund due in the amount of $ 9,635. OPINION Whether a taxpayer is liable for an addition to tax for fraud is a question of fact to be determined based on the entire record. Korecky v. Commissioner, 781 F.2d 1566, 1568 (11th Cir. 1986), affg. T.C. Memo. 1985-63; Recklitis v. Commissioner, 91 T.C. 874, 909 (1988); Meier v. Commissioner, 91 T.C. 273, 297 (1988). For purposes of section 6653(b), fraud means "actual, intentional wrongdoing," Mitchell v. Commissioner, 118 F.2d 308, 310 (5th Cir. 1941), revg. 40 B.T.A. 424 (1939), or the intentional commission of an act or acts for the specific purpose of evading a tax believed to be owing. Webb v. Commissioner, 394 F.2d 366, 377 (5th Cir. 1968), affg. T.C. Memo. 1966-81; McGee v. Commissioner, 61 T.C. 249, 256 (1973), *82 affd. 519 F.2d 1121 (5th Cir. 1975). Respondent has the burden of proving fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b); Castillo v. Commissioner, 84 T.C. 405, 408 (1985); Stone v. Commissioner, 56 T.C. 213, 220 (1971). Respondent must establish: (1) That petitioner has underpaid his taxes for each year; and (2) that some part of the underpayment was due to petitioner's intent to conceal, mislead, or otherwise prevent the collection of such taxes. Sec. 6653(b); Scallen v. Commissioner, 877 F.2d 1364, 1369 (8th Cir. 1989), affg. T.C. Memo. 1987-412; Parks v. Commissioner, 94 T.C. 654, 660-661 (1990); Hebrank v. Commissioner, 81 T.C. 640, 642 (1983). The Commissioner must show fraud resulting in an underpayment of tax for each taxable year in which fraud has been determined. Otsuki v. Commissioner, 53 T.C. 96, 105 (1969). A mere understatement of income does not establish fraud. A pattern of consistent underreporting of *83 income for a number of years, however, is strong evidence of fraud. Estate of Mazzoni v. Commissioner, 451 F.2d 197, 202 (3d Cir. 1971), affg. T.C. Memos. 1970-144 and 1970-37; Adler v. Commissioner, 422 F.2d 63, 66 (6th Cir. 1970), affg. T.C. Memo. 1968-100; Otsuki v. Commissioner, supra at 108. "The conscious purpose to defraud proscribed by the statute does not include negligence, carelessness, misunderstanding or unintentional understatement of income." United States v. Pechenik, 236 F.2d 844, 846 (3d Cir. 1956). The parties have stipulated that the income tax returns for 1987 and 1988 each contain an underpayment of tax; therefore, the only remaining issue is whether petitioner had the intent to conceal, mislead, or otherwise prevent the collection of such taxes. Fraud is never presumed; it must be established by affirmative evidence. Beaver v. Commissioner, 55 T.C. 85, 92 (1970). Fraud, however, may be inferred from any conduct, the effect of which would be to mislead or conceal, Spies v. United States, 317 U.S. 492, 499 (1943), *84 or otherwise prevent the collection of taxes, Korecky v. Commissioner, supra at 1568, or where an entire course of conduct establishes the necessary intent. Patton v. Commissioner, 799 F.2d 166, 171 (5th Cir. 1986), affg. T.C. Memo. 1985-148; Kotmair v. Commissioner, 86 T.C. 1253, 1260 (1986); Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983); Stone v. Commissioner,supra at 224. Further, fraud may be proved by circumstantial evidence and reasonable inferences drawn from the facts because direct proof of the taxpayer's intent is rarely available. Spies v. United States, supra; Miller v. Commissioner, 94 T.C. 316, 333 (1990). Courts have relied upon several indicia of fraud in considering the section 6653(b) addition to tax. Although no single factor may be necessarily sufficient to establish fraud, the existence of several indicia may be persuasive circumstantial evidence of fraud. Solomon v. Commissioner, 732 F.2d 1459, 1461 (6th Cir. 1984), *85 affg. per curiam T.C. Memo. 1982-603; Miller v. Commissioner, supra at 333. In Bradford v. Commissioner, 796 F.2d 303, 307 (9th Cir. 1986), affg. T.C. Memo. 1984-601, the U.S. Court of Appeals for the Ninth Circuit provided a nonexclusive list of circumstantial evidence that may give rise to a finding of fraudulent intent; i.e., "badges of fraud." This list is often utilized by this Court. See Clayton v. Commissioner, 102 T.C. 632, 647 (1994); DiLeo v. Commissioner, 96 T.C, 858, 875 (1991), affd. 959 F.2d 16 (2d Cir. 1992); Miller v. Commissioner, supra at 335; Meier v. Commissioner, supra at 297. The list of "badges of fraud" includes: (1) Understatement of income, (2) inadequate records, and (3) failure to cooperate with tax authorities. Additionally, making false entries or alterations is evidence of fraudulent intent. Spies v. United States, supra at 499. If any *86 portion of the underpayment is attributable to fraud, the entire underpayment is treated as attributable to fraud, except with respect to any portion of the underpayment which petitioner establishes is not attributable to fraud. Sec. 6653(b)(2). Respondent argues that petitioner is subject to the addition to tax for fraud on the grounds that petitioner: (1) Omitted large amounts of gross income through a scheme, the purpose of which was to evade tax; (2) claimed deductions for personal expenses; (3) deducted items in the wrong year; (4) claimed deductions for the same item more than once on the same return; (5) submitted altered documents in support of his deductions; and (6) refused to cooperate with respondent's revenue agent. We agree with respondent. Respondent has offered substantial evidence in support of her position. Omitted Income
With respect to the omitted income, the record reveals that on April 30, 1987, petitioner executed a memorandum to the president of Variety requesting that the bonus payments be made directly to R & L instead of to himself. Prior to the execution of the memorandum, Variety made a bonus payment directly to petitioner. Petitioner properly *87 included the bonus payment he received in gross income, and Variety issued a Form 1099 to petitioner. Following the execution of the memorandum, however, Variety made the bonus payments to R & L, and R & L distributed the bonus payments to petitioner. Petitioner failed to include any of the bonus payments he received for 1987 and 1988 in gross income subsequent to the issuance of the memorandum, and Variety failed to issue a Form 1099 to petitioner. As a result, petitioner omitted $ 16,808 and $ 39,764 from gross income for taxable years 1987 and 1988, respectively. Over the course of the 2 years at issue in the instant case, petitioner also failed to report approximately $ 35,000 in additional income. We find that the use of R & L as a conduit to receive the bonus income and avoid paying the income tax thereon is evidence of a scheme for the omission of income. We further find that petitioner exhibited a pattern of consistent underreporting of income. See Otsuki v. Commissioner, 53 T.C. 96, 106-108 (1969). Overstated Deductions
With respect to petitioner's Schedule C expenses, respondent presented evidence that petitioner overstated expenses. *88 As support for his Schedule C expenses, petitioner provided respondent's revenue agent with weekly expense reports and accompanying receipts. Examination of these reports revealed that petitioner utilized several methods to overstate his deductions. Personal Items
Petitioner overstated expenses by claiming deductions for personal items. For example, as support for his 1987 Schedule C expenses, petitioner submitted an invoice for legal expense. The record reveals, however, that the legal expense was incurred to defend petitioner in a personal matter. Petitioner also claimed a deduction in 1987 for a Sony Walkman stereo and described the item on his expense report as a recorder for office notes. A Sony representative, however, testified that the model purchased by petitioner, as indicated on the receipt provided by petitioner in support of the claimed deduction, does not have recording capabilities. Further, petitioner claimed a deduction for clothing purchased for his daughter. Petitioner concealed the personal nature of this item by including the amount in miscellaneous expenses and failing to provide an explanation. On his 1988 return, petitioner sought to inflate *89 his expenses by claiming a deduction for the cost of repairing a 1984 Subaru in Santa Barbara, California. Petitioner, however, resided in Florida during 1988 and told the revenue agent that he drove a BMW during that year. Petitioner also claimed a deduction on his 1988 return for "misc. Supplies - for W.F. Foods." The supporting documentation for this item, however, reveals that the expense was actually incurred to purchase exercise clothes. Petitioner Claimed Double Deductions
In addition to the personal expenditures, petitioner claimed deductions for several items more than once on each return, as well as receiving a reimbursement from Variety for the same item in some cases. For example, the expense reports for the weeks of May 16, 1987, and May 23, 1987, each contain a deduction for the same car rental expense. As substantiation for the expense on one report, petitioner provided his credit card receipt; to substantiate the expense on the other report, petitioner provided the invoice he received from the car rental company. The record also reveals that petitioner received a reimbursement from Variety for the same item. Similar instances occurred with respect to airfare *90 expenses and certain meal expenses. Petitioner Claimed Deductions For the Wrong Year
On his 1987 return, petitioner claimed deductions for several items of expenses incurred during 1986. Petitioner explained that he included the 1986 expenses in 1987 because he was unemployed during 1986 and therefore he was unable to deduct these expenses until 1987. Petitioner Altered Documents
The record further contains evidence that petitioner submitted altered documents in support of his deductions. The dates on several documents were changed to comport with the period for which petitioner claimed a deduction. Petitioner also increased the amount on one receipt from $ 19.50 to $ 119.50. We find that overstating deductions in the manner used by petitioner is evidence of fraud. Hicks Co. v. Commissioner, 56 T.C. 982, 1019 (1971), affd. 470 F.2d 87 (1st Cir. 1972). Refusal to Cooperate With the IRS
The record also supports respondent's allegations that petitioner refused to cooperate with the revenue agent. At the trial, the revenue agent reported the difficulties that he encountered while trying to obtain certain *91 records from petitioner. In particular, petitioner refused to provide the agent with the 1987 fourth-quarter bank statement. After several oral and written requests, the agent was forced to summon the statement directly from the bank. Upon examination of the bank statement, the revenue agent discovered unreported deposits, which ultimately lead to the discovery of the scheme to omit the bonus payments from gross income. The revenue agent encountered similar problems obtaining petitioner's 1988 records. We find that petitioner's failure to cooperate with the revenue agent is evidence of fraud. Parks v. Commissioner, 94 T.C. 654, 664-665 (1990). Petitioner offered no credible evidence to refute respondent's allegations of fraud. While he agreed with all of respondent's adjustments for the years at issue, his explanation for the underpayment of tax is that his errors were the result of honest mistakes, not fraudulent intent. Petitioner further claims that he should not be found liable for fraud because the number of altered documents he submitted to respondent's revenue agent was insignificant with respect to the total number of unaltered documents. *92 After consideration of the entire record, however, we believe that the facts of this case clearly and convincingly establish that petitioner had the intent to evade tax with respect to the years at issue. Accordingly, we hold that respondent has proved by clear and convincing evidence that petitioner is liable for additions to tax for fraud under section 6653(b)(1)(A) and (B) for 1987, and under section 6653(b)(1) for 1988. To reflect the foregoing, Decision will be entered for respondent.
Footnotes
1. At trial, the revenue agent stated that although petitioner could not substantiate any of his claimed business deductions, he allowed petitioner $ 5,000 of the claimed deductions for each year because he believed that petitioner may have incurred some legitimate business expenses. Petitioner does not contest respondent's adjustments.↩